# Exhibit O

# The Minnesota Appellate Deception





"Because petitioner provides no authority compelling this court to provide an affirmation that its disposition of this case will "align[ ] with the highest standard of justice," we decline to do so."

**- Chief Judge Susan Segal**  *(Exh. F, Index 23, p. 3)*

**I.     KEY ISSUES RAISED BY GUERTIN IN HIS MINNESOTA
         COURT OF APPEALS CASE A24-0780**………………………………………… 1

     1.  FRAUD ON THE COURT BY THE COURT ITSELF………………………….. 1
     2.  INVOLVEMENT OF EXTERNAL ENTITIES IN
         JUDICIAL PROCEEDINGS……………………………………………………….. 1
     3.  REFUSAL TO PROVIDE DISCOVERY AND
         MEDICAL RECORDS…………………………………………………………... 2
     4.  CIRCULAR HANDLING BY A SMALL TEAM OF
         JUDICIAL OFFICERS…………………………………………………………... 2
     5.  POTENTIAL COERCION OF INEFFECTIVE
         DEFENSE COUNSEL…………………………………………………………... 3
     6.  SIGNIFICANT PROCEDURAL ISSUES AND TIMELINE
         DISCREPANCIES………………………………………………………………… 4
     7.  FLAWS IN DR. ROGSTAD'S RULE 20.01 EVALUATION…………………… 4
     8.  IMPACT ON DUE PROCESS AND CONSTITUTIONAL
         RIGHTS……………………………………………………………………………… 5
     9.  FINANCIAL INCENTIVES AND EXTERNAL
         INFLUENCES…………………………………………………………………… 6

**II.    KEY ISSUES ADDRESSED IN STATES RESPONSE AND THE COURT
         ORDER DENYING DISCRETIONARY REVIEW OF PETITION**………………... 7

     1.  INTRODUCTION AND BACKGROUND……………………………………… 7
     2.  REASONING FOR DENIAL…………………………………………………… 7
     3.  CONCLUSION………………………………………………………………... 7

**III.   INSIGHT AND ANALYSIS OF OMITTED ISSUES**………………………………… 8

     A.  States Response Objecting to Discretionary Review,
         filed on May 17, 2024………………………………………………………… 8
     B.  Appellate Court Order Denying Discretionary Review,
         filed on July 2, 2024…………………………………………………………… 8
     C.  Final Assessment of Omitted Issues……………………………………… 8

**IV.    DECEPTIVE AND ABSURD STATEMENTS IN APPELLATE
         COURT'S ORDER DENYING DISCRETIONARY
         REVIEW OF GUERTIN'S PETITION**……………………………………………… 9

     1.  Petitioner was found incompetent twice………………………………………… 9
     2.  Petitioner was represented by defense counsel………………………………… 10
     3.  The ruling does not impact the Petitioner's ability to
         proceed in district court……………………………………………………… 12

Exhibit O | p. i

    4.  Deprivation of rights will be reviewable on a direct appeal
from judgement or conviction……………………………………………… 14

    5.  Petitioner didn't seek review of the district court's determination
of his incompetency……………………………………………………….. 14

**V.     AN IN DEPTH EXAMINATION OF COMPETENCY**……………………………… 15

    A.  Statement six of the Appellate Court's Order Denying Discretionary
Review of Guertin's petition, filed on July 2, 2024…………………………… 15

    B.  Logic Equation for Competency Based on
Minn. R. Crim. P. 20.01 Subd. 2…………………………………………… 17

       1.  Rule 20.01 Subd. 2: Competency to Participate
in the Proceedings………………………………………………….. 17

       2.  Breakdown of INCOMPETENCY Conditions……………………….. 17

       3.  INCOMPETENCY Logic Statement……………………………………… 17

       4.  Inversion to Determine COMPETENCY………………………………….. 17

       5.  COMPETENCY Conditions………………………………………….. 18

       6.  Conditions met under Rule 20.01 Subd. 2 that
determine COMPETENCY……………………………………………… 18

       7.  The meaning of each condition of COMPETENCY
using a dictionary……………………………………………………… 19

       8.  Literal Definitions and Conditions of COMPETENCY……………………… 21

    C.  Applying the Definition of COMPETENCY to Statement Six
of the Appellate Court's Order Denying Discretionary
Review of Guertin's Petition……………………………………………… 21

       1.  The Competency Paradox……………………………………………… 21

       2.  Demonstrating Judicial Competency…………………………………… 23

       3.  Cognitive Dissonance………………………………………………… 23

       4.  Incompetence on Display……………………………………………… 23

       5.  The True Nature of the Case…………………………………………… 24

       6.  Highlighting Judicial Bias……………………………………………… 24

       7.  Competency Defined…………………………………………………… 24

       8.  The Bigger Picture……………………………………………………… 24

       9.  Conclusion……………………………………………………………… 25

**VI.    MN CASE LAW SUPPORTING THE MINNESOTA
APPELLATE COURT'S INCOMPETENCE**……………………………………… 26

**VII.  WORDS, TERMS, AND PHRASES OMITTED FROM ALL
APPELLATE COURT ORDERS AND THE STATES RESPONSE**……………… 29

Exhibit O | p. ii

# I.  KEY ISSUES RAISED BY GUERTIN IN HIS MINNESOTA COURT OF APPEALS CASE  A24-0780 [1]

## 1.  FRAUD ON THE COURT BY THE COURT ITSELF

○ Evidence of fraudulent manipulation.

○ Judicial involvement in fraud.

" In reviewing the State's response, one cannot help but notice a striking resemblance to their previous handling of discovery materials. Just as the authentic discovery photos they maintained custody of somehow ended up cropped, edited, and duplicated for the purpose of crafting a misleading narrative about the Petitioner (Index#29), they now appear to be employing similar techniques in their arguments. Instead of manipulating images, however, they are now selectively editing and cropping out all of the key issues raised by the Petitioner to present the portrayal of a routine petition for discretionary review even though it is anything but. "
(*Exh. F, Index 31, p. 2*)

" The State and the lower court refuse to address this topic because it is the 'linchpin' that proves fraud by the lower court and is grounds to have Petitioner's case dismissed. Petitioner has presented this using established and irrefutable forensic methods, proving beyond any reasonable doubt that part of the manipulation is explicitly focused on hiding his significant undertakings related to the fabrication of his prototype for his patented technology and concealing full photographs of the invention from the altered police photos (Index#29). Petitioner's presentation makes a compelling case that this fraud was likely carried out in collusion with stakeholders of the Netflix patent. Addressing this issue would not only prove the fraud of the lower court but also unravel the larger patent issue at the core of the Petitioner's case. They have no argument or rebuttal, so they pretend it simply doesn't exist. "
(*Exh. F, Index 31, p. 4-5*)

## 2.  INVOLVEMENT OF EXTERNAL ENTITIES IN JUDICIAL PROCEEDINGS

○ External influence and impartiality.

○ Impact on fair trial rights.

" This petition raises serious concerns regarding the confirmed involvement of external entities in the judicial proceedings of my case, which has been directly

---

1   https://macsnc.courts.state.mn.us/ctrack/view/publicCaseMaintenance.do?csNameID=104303

Exhibit O | p. 1

communicated by my defense attorney, Bruce Rivers, stating, "You have some very powerful people keeping an eye on you." This acknowledgment not only raises questions about the impartiality of the judicial process but also implicates potential external influences that could prejudice the proceedings. " *(Exh. F, Index 01, p. 7)*

" Petitioner sent an email to Rivers on June 16, 2023, expressing concerns about a conflict of interest due to Rivers' YouTube channel and previous comments about "powerful people" influencing the case (Index#30,p.23-24,73-76). This highlights a potential conflict of interest, which could impair Rivers' ability to represent his client effectively, as noted in *State v. Plantin*, 682 N.W.2d 653, 663(Minn.App.2004)). "
*(Exh. F, Index 31, p. 7)*

3. <u>REFUSAL TO PROVIDE DISCOVERY AND MEDICAL RECORDS</u>

  ○ Denial of procedural rights.
  ○ Impact on defense and case outcome.

" This petition highlights the ongoing refusal by the court and defense counsel to provide access to essential discovery materials and medical records, despite repeated formal requests and multiple motions filed pro se. This denial constitutes a significant obstruction to my ability to prepare an adequate defense and raises serious questions about the fairness and integrity of the judicial process. " *(Exh. F, Index 01, p. 8)*

" Given the documented refusals and the significant implications of these denials, this petition requests immediate judicial intervention to compel the provision of the withheld discovery and medical records. Such actions are essential to uphold the fairness of the proceedings and to prevent further prejudice against my rights to an effective defense. " *(Exh. F, Index 01, p. 9)*

4. <u>CIRCULAR HANDLING BY A SMALL TEAM OF JUDICIAL OFFICERS</u>

  ○ Circular handling and concentration of power.
  ○ Systemic protocols vs. unethical arrangements.

Exhibit O | p. 2

" This petition addresses significant issues regarding the impartiality of judicial proceedings, which stem from the circular handling of my case by a small team of three judicial officers. This has raised substantial questions about the fairness and independence required in the administration of justice. " (*Exh. F, Index 01, p. 9*)

" The continuous handling of my case by the same set of three judicial officers blurs the boundaries required for impartiality and fairness. This concentrated control inherently increases the risk of bias and undermines the impartiality required in judicial proceedings. " (*Exh. F, Index 01, p. 10*)

" Cases like *SooHoo v. Johnson*, 731 NW 2d 815 (Minn. 2007) emphasize the necessity of maintaining judicial impartiality to ensure fairness in proceedings. Moreover, *State v. Barnes*, 713 NW 2d 325 (Minn. 2006), acknowledges the need for clear procedural separations to uphold justice. " (*Exh. F, Index 01, p. 10*)

5. <u>POTENTIAL COERCION OF INEFFECTIVE DEFENSE COUNSEL</u>

- ○ Ethical violations and non-representation.
- ○ Potential coercion and impact on legal representation.

" This petition brings to light the serious deficiencies in legal representation which I believe stem from potential threats or coercion exerted on my defense counsel. These circumstances have led to significant ethical and misconduct violations, severely undermining my legal defense. " (*Exh. F, Index 01, p. 11*)

" The unusual and unexplained behaviors of my counsel, including the failure to challenge crucial reports and use available evidence, suggest a potential coercion scenario. " (*Exh. F, Index 01, p. 11*)

" Petitioner and Bruce Rivers have had a longstanding relationship (Index#30,p.79-80(Texts(1-12)),Index#38,p.2(A),p.33,40,p.10(Al,Am,B),p.74-76), underscoring the out-of-character behavior displayed by Rivers in this case. Petitioner retained Rivers due to his proven abilities and skills as a defense attorney, highlighting the trust and confidence Petitioner initially had in him. " (*Exh. F, Index 31, p. 6*)

6. <u>SIGNIFICANT PROCEDURAL ISSUES AND TIMELINE DISCREPANCIES</u>

○ Non-existent motion for continuance.

○ Rule 20.01 exam report discrepancies.

○ Procedural and timeline inconsistencies.

" This petition addresses the substantial procedural discrepancies and timeline issues within my case. Notably, there was an issuance of a continuance order based on a non-existent motion and significant inconsistencies in the case timeline, including the out-of-order indexing and the mishandling of the Rule 20.01 exam report. "
(*Exh. F, Index 01, p. 12*)

" The Rule 20.01 exam report dated March 10, 2023, which was ostensibly authored by Dr. Jill Rogstad, presents significant administrative and procedural discrepancies. Notably, Chela Guzman-Weigart, an administrative figure not involved in psychological assessments, is listed as the creator of the document according to its metadata. This unusual authorship attribution conflicts with Rule 14 related to e-filing, which mandates accurate and transparent document handling and authorship in the e-filing system. " (*Exh. F, Index 01, p. 13*)

" The timeline of case events shows multiple procedural anomalies, such as out-of-order timeline indexes and missing or incorrectly filed documents. These issues raise concerns about the integrity and transparency of the judicial process. "
(*Exh. F, Index 01, p. 13*)

7. <u>FLAWS IN DR. ROGSTAD'S RULE 20.01 EVALUATION</u>

○ Contradictions in assessment and competency.

○ Ethical and professional standards violations.

○ Questionable evaluation methods.

○ Legal and forensic psychology standards.

" This petition challenges the competency determination made by Dr. Jill Rogstad under Rule 20.01, arguing substantial flaws in the evaluation process,

Exhibit O | p. 4

which are both procedural and ethical in nature. The foundational issues center around the validity of the assessment and the adherence to forensic psychology standards. " *(Exh. F, Index 01, p. 14)*

" Dr. Rogstad's role required an impartial evaluation, free from external influences. The presence of metadata suggesting involvement of Chela Guzman-Weigart in the document's creation raises concerns about the authenticity and independence of the evaluation " *(Exh. F, Index 01, p. 14)*

" The discrepancies and ethical concerns surrounding Dr. Rogstad's Rule 20.01 evaluation call for a thorough review and reconsideration of the competency determination. It is crucial that the assessment adheres to the highest standards of forensic psychology to ensure justice and fairness in the application of the law. "
*(Exh. F, Index 01, p. 16)*

8. <u>IMPACT ON DUE PROCESS AND CONSTITUTIONAL RIGHTS</u>

- ○ Violation of Sixth and Fourteenth Amendment rights.
- ○ Manipulated evidence and judicial bias.

" In *Droher v. State*, 303 Minn. 188, 191-92(1975), the Minnesota Supreme Court concluded that "the determination of competency is a fundamental aspect of ensuring a fair trial," wherein the determination must be based upon "a fair preponderance of the evidence" *State v. Ganpat*, 732 N.W.2d 232,238(Minn.2007). When the State fails to consider "a fair preponderance of the evidence" in determining competency, it contravenes the precedent set forth in Droher and Ganpat and negates the constitutional guarantees of a fair trial and due process under the Sixth and Fourteenth Amendments. " *(Exh. F, Index 31, p. 1-2)*

" The external surveillance and interference in the judicial process could severely affect the fundamental right to a fair trial, protected under the Sixth Amendment. This situation mirrors concerns similar to those in *Sheppard v. Maxwell*, 384 U.S. 333 (1966), where the Supreme Court emphasized the necessity of shielding the judicial process from pervasive external influences. " *(Exh. F, Index 01, p. 7)*

9. <u>FINANCIAL INCENTIVES AND EXTERNAL INFLUENCES</u>

- ○ Substantial financial incentives related to patented technology.
- ○ External influences affecting judicial proceedings.

  " The Petitioner asserts that the Hennepin County 4th Judicial District Court is complicit in a criminal conspiracy, directly affecting the integrity of Mr. Guertin's ongoing court case. This unprecedented situation necessitates an immediate and thorough review to rectify the compromised judicial proceedings and uphold justice."
  *(Exh. F, Index 01, p. 3)*

  " where almost every single aspect of the Petitioner's life (Index#28,p.192-197), achievements (Index#28,p.26-36), and SUBSTANTIAL business-related endeavors (Index#84,p.5-7,A(1-6),p.21-24,E(1-14)) involving his granted US Patent-11,577,177 and Netflix, both before and after receiving his criminal charges on January 21, 2023, which the Petitioner asserts is the reason for his criminal charges ever originating in the first place and the reason for everything that is currently taking place in his case, weren't just completely omitted (Index#28,p.105-108,115,126-129,Index#84,p.11-12, (B3)), but in many instances, were instead actually used as evidence to support the diagnosis itself, as has been unequivocally proven in the Petitioner's Motion for Judicial Notice: B submitted to this Court on May 28, 2024 (Index#84). "
  *(Exh. F, Index 31, p. 2)*

  " Petitioner has presented this using established and irrefutable forensic methods, proving beyond any reasonable doubt that part of the manipulation is explicitly focused on hiding his significant undertakings related to the fabrication of his prototype for his patented technology and concealing full photographs of the invention from the altered police photos (Index#29). Petitioner's presentation makes a compelling case that this fraud was likely carried out in collusion with stakeholders of the Netflix patent. Addressing this issue would not only prove the fraud of the lower court but also unravel the larger patent issue at the core of the Petitioner's case. "
  *(Exh. F, Index 31, p. 4-5)*

" Netflix Press Release announces acquisition of Scanline VFX and Eyeline Studios "
*(Exh. F, Index 26, p. 8)*

" Netflix's Q1 2022 Shareholders letter reveals $125 million spent acquiring Scanline
VFX, Eyeline Studios, and small gaming company "
*(Exh. F, Index 26, p. 9)*

## II.   KEY ISSUES ADDRESSED IN STATES RESPONSE AND THE COURT ORDER DENYING DISCRETIONARY REVIEW OF PETITION

1. INTRODUCTION AND BACKGROUND
   - Petitioner charged with firearm-related offenses.
   - Competency evaluations ordered and findings of incompetence.
   - Motion to discharge counsel and proceed pro se denied based on incompetence.
   - Petition for discretionary review of the denial of self-representation.

2. REASONING FOR DENIAL
   - Established precedent: An incompetent defendant cannot waive the right to counsel.
   - No compelling reason for discretionary review.
   - The court's ruling is not questionable and does not involve unsettled law.
   - Denying self-representation does not impact petitioner's ability to proceed.
   - Future competency determinations can be appealed directly.

3. CONCLUSION
   - Denial of petition for discretionary review.
   - Denial of motions for judicial notice as unnecessary.

Exhibit O | p. 7

## III.   INSIGHT AND ANALYSIS OF OMITTED ISSUES

**A.  States Response Objecting to Discretionary Review, filed on May 17, 2024**
(*Exh. F, Index 21*)

- ○  The state's response mirrors the appellate courts denial order in its focus.

- ○  It emphasizes the same legal precedents regarding competency and self-representation.

- ○  The response does not address any of the key issues raised by the petitioner, including fraud, external influences, refusal to provide access to records, impartiality concerns, lack of effective representation, procedural issues, or flaws in the competency evaluation.

**B.  Appellate Court Order Denying Discretionary Review, filed on July 2, 2024**
(*Exh. F, Index 35*)

- ○  The court order primarily addresses the denial of the petitioner's request for self-representation.

- ○  The reasoning is based on established legal precedents that an incompetent defendant cannot waive the right to counsel.

- ○  The order does not address any of the petitioner's key issues such as fraud, external influences, refusal to provide access to records, impartiality concerns, lack of effective representation, procedural issues, or flaws in the competency evaluation.

**C.  Final Assessment of Omitted Issues**

- ○  Both the court order and the state's response employ the same method of omitting every single key issue raised by the petitioner.

- ○  They focus exclusively on the procedural aspect of denying self-representation due to incompetency, without engaging with the substantial allegations and evidence presented by the petitioner.

○ This approach suggests a deliberate intention to ignore the critical issues central to the petitioner's case, making the documents appear interchangeable in their intent and effect.

○ The omissions are striking and indicate a unified strategy to sidestep addressing the petitioner's serious concerns, thus presenting a deceptive portrayal of the petitioner's case.

## IV.   DECEPTIVE AND ABSURD STATEMENTS IN APPELLATE COURT'S ORDER DENYING DISCRETIONARY REVIEW OF GUERTIN'S PETITION

1. <u>"The district court issued an order on July 13, 2023, finding petitioner incompetent to proceed. On November 15, 2023, the district court issued a second order for a competency evaluation and again found petitioner incompetent on January 17, 2024."</u> (*Exh. F, Index 35, p. 1*)

○ Guertin challenged these findings by presenting substantial evidence of procedural flaws, judicial misconduct, and ineffective assistance of counsel. He highlighted that the competency evaluations were based on manipulated evidence and flawed reports. Dr. Jill Rogstad's Rule 20.01 exam report contained significant inconsistencies, with metadata discrepancies suggesting administrative involvement rather than professional evaluation.

In January 2024, a series of troubling events unfolded:

• January 15: Guertin's defense counsel, Bruce Rivers, informed him there was "No court" for his scheduled January 16 hearing.

• January 16, Morning: A court order was signed, stating "Prior to the hearing, the parties agreed to a finding of incompetency entered administratively." Guertin was neither informed nor did he consent to this agreement.

• January 16, Afternoon: A 'Notice of Remote Zoom Hearing' was submitted for a review hearing scheduled for July 16, 2024, six months away.

- January 17, Morning: The withheld court order from January 16 was officially submitted into the record. This court order, prepared and signed on January 16, appeared in the timeline of Guertin's case out of sequence.

- January 22: An affidavit of service was filed, serving an 'order to appear'.

- January 25: Guertin realized the upcoming hearing on February 1 and began trying to contact Bruce Rivers for the exam report.

- January 26: Guertin filed a pro se motion for continuance and sent multiple requests to Bruce Rivers for the exam report, which he still had not received.

- January 31: Guertin signed a 'Waiver of Appearance' to avoid attending the in-person hearing without the exam report, extending the stay of commitment by nine months.

Conclusion:

Claiming that Guertin was found incompetent on the specified dates without acknowledging these profound deficiencies is both deceptive and absurd. The documented evidence of procedural irregularities, fraudulent discovery materials introduced, ineffective defense counsel, and judicial bias thoroughly dismantles the validity of the district court's findings.

2. "On April 3, 2024, petitioner - who had been represented by counsel since February 2023 - filed a motion in district court to discharge his counsel and proceed pro se."
   (*Exh. F, Index 35, p. 2*)

   ○ The claim that Guertin "had been represented by counsel since February 2023" is grossly misleading and deceptive. While technically true, this statement completely ignores the reality that the counsel's representation was grossly ineffective. Guertin

dealt with a defense attorney who failed to provide crucial discovery materials and misled him about key court dates. Guertin stated, "Rivers has failed to deliver critical discovery materials and the January 3, 2024, examination report, despite multiple requests from me." (*Exh. F, Index 30, p. 9*)

○ These failures were so severe that Guertin felt compelled to file a motion to discharge the counsel and proceed pro se, even though he initially retained Bruce Rivers due to his well-known and respected criminal defense skills.

○ Moreover, this statement deceptively suggests that Guertin was adequately represented, which is far from the truth. Being forced to maintain such ineffective defense counsel became an unnecessary obstacle. Instead of advocating for him, Rivers misled and confused Guertin, creating a significant barrier. The court and other parties always looked to and communicated through this ineffective counsel. As Guertin noted, "Rivers also misled me by advising against presenting key evidence at the July 7, 2023, court hearing." (*Exh. F, Index 30, p. 9*)

○ This situation rendered the counsel not as a helpful 'legal filter' but instead as a barrier that served to keep Guertin contained, and unable to aggressively advocate on his own behalf. In fact every single attempt that Guertin actually made to actively participate in his defense were all seemingly impeded by both Bruce Rivers, as well as Michael Biglow.

○ Additionally, Guertin was willing to undertake the tedious and demanding task of representing himself, even at the cost of forfeiting the substantial amount of money paid to retain Bruce Rivers. This clearly indicates the severity of the situation and Guertin's lack of faith in his counsel. He found no joy or excitement in trying to become a defense attorney; rather, it was a desperate move to ensure his case was handled properly. Guertin emphasized, "Bruce Rivers should be taking steps such as filing a motion to redetermine competency, addressing judicial decisions procured by fraud... and actively defending his client." (*Exh. F, Index 30, p. 10*)

Exhibit O | p. 11

○ In light of these facts, the assertion that Guertin "had been represented by counsel since February 2023" is not only misleading but also an obvious attempt to paint a false picture of adequate legal representation. This deceptive statement fails to acknowledge the profound deficiencies in the counsel's performance (*Exh. F, Index 31, p. 6-7*) and the resulting impact on Guertin's legal proceedings (*Exh. F, Index 01, p. 8-9, 11-12*). Issues which Guertin brought directly before the appellate court in both his petition for discretionary review, as well as his response in support of petition filed on May 30, 2024. So, yes, he technically had "representation", but that doesn't inherently imply it was the effective, and beneficial kind.

3. <u>"Second, the ruling does not impact petitioner's ability to proceed in district court. Because he has been found incompetent, the prosecution must be suspended entirely. Accordingly, not permitting petitioner to discharge counsel and proceed pro se at this time is of no consequence to the district court proceedings other than those related to competency."</u>  (*Exh. F, Index 35, p. 3*)

○ The claim that "the ruling does not impact petitioner's ability to proceed in district court" and that "not permitting petitioner to discharge counsel and proceed pro se at this time is of no consequence to the district court proceedings other than those related to competency" is grossly misleading and absurd.

○ Mr. Guertin actively contested the incompetency determination throughout the entire legal process. He provided extensive evidence challenging the validity of the competency evaluations (*Exh. F, Index 27, p. 5-34*) and the procedures that followed. Guertin stated, "The State isn't just 'failing to consider' evidence in my case – it's producing fraudulent versions of its own." (*Exh. F, Index 31, p. 2*) These flaws cast serious doubt on the validity of the competency findings and are central to his entire case.

○ Furthermore, Guertin's central argument was that his due process and constitutional rights had been violated through blatant deception (*Exh. F, Index 27, p. 32-34*), fraud (*Exh. G, Index 05*), and judicial bias (*Exh. G, Index 06*). He highlighted significant

judicial misconduct (*Exh. F, Index 26, p. 19, 6/14/23*) and external influences (*Exh. F, Index 26, p. 23, 8/11/23*) affecting the fairness and integrity of the proceedings. The statement that the ruling has no impact on his ability to proceed in district court is a blatant misrepresentation. Guertin's legal rights and ability to defend himself were, and still are, severely affected by the incompetency determination and the associated proceedings. He's consistently argued that the incompetency findings were used to undermine his legal rights and place him at risk (*Exh. F, Index 31, p. 3*) of unjust civil commitment.

○ Moreover, the assertion that not permitting Guertin to discharge counsel and proceed pro se is of no consequence is an egregious distortion of the truth. The proceedings "related to competency" are precisely the ones that threaten him with unjust civil commitment based on the decisions of a few individuals rather than his constitutionally protected right to a fair trial. This is particularly concerning given the substantial financial incentives (*Exh. J, Index 12, p. 24*) involved, as highlighted by the patent issue (*Exh. F, Index 31, p. 4-5, Index 27, p. 5*) and the direct mention of "powerful people keeping an eye on him" (*Exh. F, Index 31, p. 7*) by his own defense counsel. These influences raise serious questions about the impartiality and fairness of the proceedings.

○ Therefore, claiming that the ruling has no impact on Guertin's ability to proceed is not only misleading but also a deliberate attempt to downplay the severe consequences of the competency-related proceedings. This statement turns Guertin's central issue - the fight against an unjust competency determination - on its head, presenting it as a non-issue.

○ Guertin's entire goal has been to ensure his right to due process and fair treatment in the legal system, and the current proceedings have severely hindered this. So, yes, the ruling has profound consequences, directly threatening Guertin's liberty and undermining his constitutional rights. This is a critical issue that cannot be dismissed or trivialized.

4.  "Third, the issue of whether the district court improperly deprived him of his right to self-representation will be reviewable on a direct appeal from any resulting judgment of conviction." (*Exh. F, Index 35, p. 4*)

    ○ The claim that "the issue of whether the district court improperly deprived him of his right to self-representation will be reviewable on a direct appeal from any resulting judgment of conviction" is misleading and absurd.

    ○ Guertin has been actively seeking fair judgment and due process, which includes the opportunity to defend himself.

    ○ Mentioning that a decision will be reviewable from any future judgment is absurd when the entire situation seems designed to prevent Guertin from ever getting that chance.

    ○ If he is unjustly committed to a mental institution based on fraudulent competency determinations influenced by significant financial incentives, he may never receive any final judgment at all.

    ○ This statement ignores the core issue: Guertin's fundamental right to a fair trial and the ability to challenge the fraudulent determinations that threaten his liberty.

5.  "Because petitioner seeks discretionary review of the district court's order denying his request for self-representation and not the district court's underlying determination of his incompetency." (*Exh. F, Index 35, p. 4*)

    ○ This statement is blatantly false and misleading.

    ○ Guertin has consistently sought to challenge both the denial of his request for self-representation and the underlying determination of his incompetency (*Exh. F, Index 01, p. 14-16*). His filings are replete with arguments (*Exh. F, Index 31, p. 2*) and evidence (*Exh. F, Index 27, p. 5*) contesting the validity (*Exh. F, Index 27, p. 17-20*) of the competency determinations (*Exh. F, Index 31, p. 4*), which he asserted were based

Exhibit O | p. 14

on manipulated evidence (*Exh. F, Index 31, p. 5*) and fraudulent authorship. (*Exh. F, Index 1, p. 13; Exh. G, Index 05*)

◦ By claiming that Guertin is not challenging the incompetency determination, this statement ignores the core issue and misrepresents his actual position. Guertin's entire legal battle centers around proving his competence (*Exh. F, Index 31, p. 5-6*) and exposing the fraudulent actions (*Exh. F, Index 31, p. 3*) being carried out against him, making this assertion not only false but also a deliberate attempt to obscure the true nature of his appellate case (*Exh. J, Index 12, p. 25-50, Index 13, p. 11-14, 42*) and petition for discretionary review. (*Exh. F, Index 01*)

## V.   AN IN DEPTH EXAMINATION OF COMPETENCY

**A. Statement six of the Appellate Court's Order Denying Discretionary Review of Guertin's petition, filed on July 2, 2024.** (*Exh. F, Index 35*)

6. <u>"On May 28, 2024, petitioner filed four separate motions requesting that this court take judicial notice of various documents and factual assertions that petitioner argues demonstrate his competency to proceed."</u>  (*Exh. F, Index 35, p. 4*)

◦ The key part of this statement that jumps off of the page for some reason has nothing at all to do with the four motions being discussed – yet still manages to thoroughly address all four of them – with the key excerpt being the ending – "assertions that petitioner *argues* demonstrates his competency to proceed"

◦ Does the appellate court truly believe that Guertin is required to present a valid '*argument*' in order to accomplish the task of being able to adequately 'demonstrate his competency' to the court? If so, then perhaps it would also be appropriate for one to request that the court itself be required to present an argument demonstrating their competency to oversee, and manage said proceedings.

It is truly is some mind boggling, next level, mental gymnastics, to try and fully comprehend, and come to terms with the blatantly absurd, yet carefully crafted actions, assertions, arguments, and portrayals being advanced by both the appellate

court as well as the State, as it pertains to the methods they've deployed in their handling, and subsequent 're-packaging' of Guertin's Minnesota Court of Appeals Case A24-0780. (*Exh. F, Index 00*)

Mind melting, psychomanipulative-mastery, in the artisanal craft of being able to convincingly gaslight someone in 'expert-mode' to such a masterful degree that even though the subject is blatantly aware of the complete absurdity being perpetrated upon their psyche, they still can't help but wonder whether or not some of those carrying it out may actually view the deceptive projections they cast as truth.

The metaphor of one "wishing they could be a fly on the wall" in a room when some absurd decision, or action originates, is not one that is thought about or pondered very often, if ever in Guertin's case – but he would be lying if he claimed it didn't explicitly pop up above his head as a thought bubble upon first reading the State's response (*Exh. F, Index 21*) objecting to discretionary review of his petition by the appellate court.

> *"Surely they all have to be sitting there and discussing whether or not they may be pushing the boundaries of legal viability, and believability just a bit too far....or is it actually possible that some of them may in fact truly believe what they are saying…?"*

> *"What I wouldn't give to be a fly on the wall in that room.."*

**B. Logic Equation for Competency Based on Minn. R. Crim. P. 20.01 Subd. 2**

1. <u>Rule 20.01 Subd. 2: Competency to Participate in the Proceedings</u>

   ◦ A defendant **is INCOMPETENT** and must not plead, be tried, or be sentenced [ if ] the defendant, due to mental illness or cognitive impairment, lacks the ability to:

      (a) rationally consult with counsel; [ or ]
      (b) understand the proceedings [ or ] participate in the defense.

2. <u>Breakdown of **INCOMPETENCY** Conditions:</u>

   ◦ (a) Rationally Consult with Counsel:
      The defendant lacks the ability to rationally consult with counsel.

   ◦ (b) Understand the Proceedings [ or ] Participate in the Defense:
      (b1): The defendant lacks the ability to understand the proceedings. [ or ]
      (b2): The defendant lacks the ability to participate in the defense.

3. **INCOMPETENCY** <u>Logic Statement:</u>

   ◦ A or ( B1 or B2 )
      Let A be the condition for "rationally consult with counsel."
      Let B1 be the condition for "understand the proceedings."
      Let B2 be the condition for "participate in the defense."

   Thus, the logic equation for incompetency is: (Incompetent = A ∪ ( B1 ∪ B2 ))

4. <u>Inversion to Determine **COMPETENCY**:</u>

   ◦ To determine the conditions for competency, we need to find the inverse of the incompetency logic statement.

Exhibit O | p. 17

5. **<u>COMPETENCY</u>** <u>Conditions:</u>

- A person **is COMPETENT** [ if ] they **do not lack the ability** to:

    (a) rationally consult with counsel [ and ]

    (b) understand the proceedings [ and ]

    (c) participate in the defense.

- Thus, the logic equation for competency is the negation of the incompetency conditions:  (Competent = ¬ (A ∪ (B1 ∪ B2)))

    Using De Morgan's laws, we can distribute the negation:

    (Competent = ¬ A ∩ ¬ B1 ∩ ¬ B2)

- Final Competency Logic Statement

    A defendant **is COMPETENT** [ if ]:

    1. The defendant can rationally consult with counsel (¬A)

    2. The defendant can understand the proceedings (¬B1)

    3. The defendant can participate in the defense (¬B2)

- Therefore, the **COMPETENCY conditions** are:

    (Competent = (¬A) ∩ (¬B1) ∩ (¬B2))

        ¬A: The defendant can rationally consult with counsel.

        ¬B1: The defendant can understand the proceedings.

        ¬B2: The defendant can participate in the defense.

6. <u>To establish that a defendant **is COMPETENT** under Rule 20.01 Subd. 2, the following conditions must be met:</u>

    1. The defendant can rationally consult with counsel

    2. The defendant can understand the proceedings

    3. The defendant can participate in the defense

This logical structure can be used to evaluate the competency of a defendant in legal proceedings, ensuring that all aspects of the rule are considered.

Exhibit O | p. 18

7. <u>Establishing the meaning of each condition of **COMPETENCY** using a dictionary</u>

○ "We also interpret statutes so as to give effect to each word and phrase" and "when a word or phrase has a plain meaning, we presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction"

   *Shire v. Rosemount, Inc.*, 875 NW 2d 289, 292 (Minn. 2016) [2]; citing *Allan v. R.D. Offutt Co., 869 N.W.2d 31*, 33 (Minn.2015), and *State v. Struzyk*, 869 N.W.2d 280, 284-85 (Minn. 2015)

i. 'Ability to Rationally Consult with Counsel' Definition:

   • Rationally:
     Based on or in accordance with having reason or understanding; relating to, based on, or agreeable to reason. [3]

   • Consult:
     To seek advice the advice or opinion of someone; to refer to; to consult an individual [4].

   • Counsel:
     A lawyer engaged in the trial or management of a case in court; a lawyer appointed to advise and represent in legal matters. [5]

   • Literal Interpretation of Ones 'Ability to Rationally Consult with Counsel':
     A defendant is able to rationally consult with counsel if they can engage in a sensible and logical manner with their lawyer, seeking and understanding advice, and participating in discussions about their defense strategy.

---

2  https://scholar.google.com/scholar_case?case=11168626739202463855&q=979+N.W.2d+52&hl=en&as_sdt=806#p292

3  https://www.merriam-webster.com/dictionary/rationally

4  https://www.merriam-webster.com/dictionary/consult

5  https://www.merriam-webster.com/dictionary/counsel

Exhibit O | p. 19

ii.  'Ability to Understand the Proceedings' Definition:

- Understand:

    To grasp the meaning of; to have understanding of. [6]

- Proceedings:

    An action, hearing, trial, or application before the court; a legal action. [7]

- Literal Interpretation of Ones 'Ability to Understand the Proceedings':

    A defendant is able to understand the proceedings if they can comprehend the nature and purpose of the judicial process, including the roles of the participants, the charges against them, the potential consequences, and the general sequence of events in a trial.

iii.  'Ability to Participate in the Defense' Definition:

- Participate:

    To take part or have a share in something. [8]

- Defense:

    The act or action of defending; means or method of defending or protecting oneself; a defending party or group (as in a court of law). [9]

- Literal Interpretation of Ones 'Ability to Participate in the Defense':

    A defendant is able to participate in the defense if they can engage actively and meaningfully in their defense strategy. This includes being able to communicate with their attorney, make decisions about their defense, testify if necessary, and understand the implications of different defense strategies.

---

6   https://www.merriam-webster.com/dictionary/understand

7   https://www.merriam-webster.com/dictionary/proceedings

8   https://www.merriam-webster.com/dictionary/participate

9   https://www.merriam-webster.com/dictionary/defense

Exhibit O | p. 20

8. <u>Literal Definitions and Conditions of **COMPETENCY**</u>

   i. Rationally Consult with Counsel:
   - Engage in sensible and logical discussions with their lawyer.
   - Seek, understand, and use legal advice.
   - Participate in the planning and execution of their defense strategy.

   ii. Understand the Proceedings:
   - Comprehend the nature and purpose of the judicial process.
   - Recognize the roles of the participants, the charges, and potential outcomes.
   - Follow the sequence of events in the trial.

   iii. Participate in the Defense:
   - Actively and meaningfully engage in their defense.
   - Communicate effectively with their attorney.
   - Make informed decisions about their defense.
   - Testify and understand the implications of defense strategies.

**C. Applying the Definition of COMPETENCY to Statement Six of the Appellate Court's Order Denying Discretionary Review of Guertin's Petition**

- <u>"On May 28, 2024, petitioner filed four separate motions requesting that this court take judicial notice of various documents and factual assertions that petitioner argues demonstrate his competency to proceed."</u> (*Exh. F, Index 35, p. 4*)

1. <u>The Competency Paradox:</u>

   - The appellate court's assertion that Guertin must argue to demonstrate his competency is paradoxical. The very existence of his entire case, into which he has meticulously filed four detailed motions filled with coherent arguments and substantial evidence, is itself a testament to his competency. It is ironic and absurd to demand proof of competency from someone who has successfully navigated and engaged with the legal process at this level.

If Guertin were truly incompetent, the necessity of judicial responses would be unnecessary altogether. He never would have been able to successfully navigate the multi-step, tedious process of:

- Drafting a coherent legal complaint
- Properly formatting and structuring legal documents
- Filing the initial case without it being dismissed outright
- Meeting the court's procedural requirements
- Serving process on the relevant parties
- Responding to motions and orders in a timely and appropriate manner
- Drafting and filing motions supported by evidence and legal arguments
- Engaging in legal research to support his claims
- Understanding and citing relevant case law and statutes
- Preparing and submitting evidence exhibits
- Filing replies and rebuttals to state objections
- Managing communication with the court and opposing counsel
- Adhering to strict deadlines and procedural rules
- Comprehending and addressing complex legal issues

The extensive steps required to initiate and maintain a legal case demonstrate a level of competency that directly contradicts the court's assertion. Furthermore, the fact that Guertin was able to successfully complete these many steps is not just an indication that he is competent - it is perhaps an indicator that he is exceptionally competent.

Most competent individuals are neither willing nor able to undertake the tedious and demanding process of filing and managing their own appellate case.

Guertin's ability to do so highlights a level of competence that surpasses that of many typical defendants or petitioners. The very fact that the court must engage with his filings is a clear indication of his exceptional competency.

2. <u>Demonstrating Judicial Competency:</u>

   ○ If the court insists that Guertin must prove his competency, then it would be equally appropriate for the court to demonstrate its own competency in overseeing these proceedings.

   The numerous procedural errors and omissions in addressing Guertin's substantive claims raise serious questions about the court's ability to impartially manage the case.

   ○ The court's blatantly deceptive order can only be the result of one of two things: either the court is incompetent or it is complicit in and endorsing the conspiracy being perpetuated against Guertin. These are the only two possible explanations that can account for the court's actions, both of which are deeply troubling and warrant serious scrutiny.

3. <u>Cognitive Dissonance:</u>

   ○ The cognitive dissonance required to accept the court's position is staggering. Guertin has exposed multiple layers of judicial misconduct and procedural anomalies through his well-constructed legal filings. Yet, the court continues to maintain a narrative that contradicts the clear evidence presented. It's as if the court is operating in an alternate reality where the obvious truth is conveniently ignored.

4. <u>Incompetence on Display:</u>

   ○ The irony here is that while the court questions Guertin's competency, it is their actions that reveal a troubling level of incompetence. Guertin, working pro se, has managed to compile and present a substantial body of evidence that challenges the court's findings. The court's refusal to engage with this evidence and its attempts to dismiss Guertin's motions without proper consideration expose a deeper issue of judicial inadequacy.

5.  <u>The True Nature of the Case:</u>

    ○  Guertin's entire legal battle is centered around proving his competency and exposing the fraudulent processes that have been used against him. The court's refusal to acknowledge the legitimacy of his claims and its continuous focus on procedural technicalities is a deliberate attempt to obscure the true nature of his appellate case and petition for discretionary review.

6.  <u>Highlighting Judicial Bias:</u>

    ○  The court's consistent failure to address the substantive issues raised by Guertin indicates a clear bias. Instead of considering the substantial evidence of procedural irregularities and misconduct, the court focuses on maintaining a facade of procedural correctness. This approach not only undermines Guertin's rights but also damages the integrity of the judicial process.

7.  <u>Competency Defined:</u>

    ○  According to Minn. R. Crim. P. 20.01 Subd. 2, competency means the ability to rationally consult with counsel, understand the proceedings, and participate in the defense. Guertin has demonstrated all these abilities through his detailed filings and active participation in his defense. The court's refusal to acknowledge these demonstrations reveals a deliberate disregard for the true definition of competency.

8.  <u>The Bigger Picture:</u>

    ○  Viewing the situation from a broader perspective, it becomes clear that the actions of the appellate court and the state reflect a broader pattern of judicial misconduct and systemic bias. Guertin's efforts to expose these issues are not just about his own case but highlight deeper flaws within the judicial system. This case is a microcosm of a larger struggle for justice and integrity in the face of corruption and deceit.

9.  <u>Conclusion:</u>

○  The implied assertion that Guertin needs to prove his competency is a deceptive and blatant farce. The true incompetence lies with those who continue to perpetuate a false narrative while ignoring the overwhelming evidence of manipulated discovery materials (*Exh. F, Index 31, p. 1*), fraudulent competency evaluations (*Exh. F, Index 31, p. 2*), unethical judicial behavior (*Exh. F, Index 31, p. 3*), judicial misconduct (*Exh. F, Index 01, p. 3*), failure to address pro se motions (*Exh. F, Index 01, p. 3*), involvement of powerful external entities (*Exh. F, Index 01, p. 7*), refusal to provide access to discovery and medical records (*Exh. F, Index 01, p. 8*), circular handling by a small team of judicial officers (*Exh. F, Index 01, p. 9*), ineffective assistance of counsel (*Exh. F, Index 31, p. 6*), procedural discrepancies (*Exh. F, Index 01, p. 12*), altered police photos (*Exh. F, Index 31, p. 4*), court orders granting non-existent motions for continuance (*Exh. F, Index 01, p. 12*), and the concealment of significant business endeavors related to Guertin's patented technology and Netflix (*Exh. F, Index 31, p. 5*), among numerous other egregious issues.

Guertin's fight for justice is not just a testament to his competency, but a glaring indictment of the system that seeks to silence him. The irony is palpable: the very person they claim is incompetent is the same individual who has meticulously investigated, analyzed, assembled, and presented a substantial body of irrefutable evidence exposing the incompetence and misconduct of those in power, despite their considerable resources and disregard for the rules. While they have manipulated and maneuvered behind the scenes, Guertin, as the undeniable underdog, has adhered to every legal requirement, systematically dismantling and exposing their deceit.

His relentless pursuit of justice highlights their failures and underscores the true incompetence of those in positions of 'power' who conspire against him. In the end, it is Guertin's relentless dedication to uncovering the truth that has put their deceptive, and corrupt actions on display for all to see. An ultra-HD, 8k display, presenting a perfect, crystal-clear view of the rather stark contrast between Guertin's integrity and the utter lack of integrity displayed by those he has exposed - individuals with careers supposedly dedicated to upholding principles of justice, which they are proving may

be just as much of an illusion as the virtual world Guertin's US Patent 11,577,177 allows someone to infinitely explore.

# V.   MN CASE LAW SUPPORTING THE MINNESOTA APPELLATE COURT'S INCOMPETENCE

- ○ "The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."
  *Pate v. Robinson*, 383 U.S. 375, 385 (1966)

- ○ "The determination of competency is a fundamental aspect of ensuring a fair trial, and the court must ensure that all procedures are adequately followed to protect this right."

  "The failure to conduct a competency hearing when warranted is a violation of due process and can result in the reversal of a conviction."
  *Droher v. State*, 303 Minn. 188, 191-92 (1975)

- ○ "The state must show the defendant's competence by a fair preponderance of the evidence."
  *State v. Ganpat*, 732 N.W.2d 232, 238 (Minn. 2007)

- ○ "Ganpat cited Minn. R. Crim. P. 20.01, subd. 3(6) (2009). That rule provided: 'If upon consideration of the report and the evidence received at any hearing, the court finds by the greater weight of the evidence that the defendant is competent, the court shall enter an order finding that the defendant is competent.'"
  *State v. Curtis*, 921 N.W.2d 342, 347-48 (Minn. 2018); citing *State v. Ganpat*, 732 N.W.2d 232, 238 (Minn. 2007)

Exhibit O | p. 26

- "In Ganpat, we said that the standard of proof in a competency hearing is a 'fair preponderance of the evidence.'"
  *State v. Curtis*, 921 N.W.2d 342, 347 (Minn. 2018); citing *State v. Ganpat*, 732 N.W.2d 232, 238 (Minn. 2007)

- "In particular, we note that at a hearing on March 31, 2010, appellant expressed himself articulately when he explained why he wanted to proceed to trial and what his trial strategy would be, including the witnesses he would call and exhibits he would propose." *State v. Sabahot*, A10-2174, p. 10 (Minn. App. Jan. 3, 2012)

- "At each hearing, Goodrich acted in a disruptive manner. But Goodrich - acting pro se - also brought numerous oral and written motions, many supported by citations to legal authorities and rational, if misguided, legal arguments."
  *State v. Goodrich*, No. A07-1018, p. 4 (Minn. App. Jul. 08, 2008)

- "During subsequent proceedings, appellant exhibited some curious behavior… However, appellant was able to challenge the accuracy of photographs introduced through the police officers and asked a series of questions directed at the credibility of the police officers."
  *State v. Foss*, A09-2152, p. 4 (Minn. App. Oct. 19, 2010)

- "During several hearings appellant demonstrated engagement with the district court, his attorney, and the county attorney regarding his case. He demonstrated that he understood the trial process and his right to a jury trial when he argued for a reduction in bail and demanded that his right to a speedy trial be vindicated."
  *State v. Sabahot*, A10-2174, p. 10 (Minn. App. Jan. 3, 2012)

Exhibit O | p. 27

○ "A defendant is competent to stand trial if he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."
*State v. Sabahot*, A10-2174, p. 8 (Minn. App. Jan. 3, 2012)

○ "In deciding whether there is reason to doubt the defendant's competence, the district court may consider the defendant's behavior, demeanor, and any prior medical opinion on the defendant's competence."
*State v. Goodrich*, No. A07-1018, p. 3 (Minn. App. Jul. 08, 2008)

○ "We emphasize that contested competency hearings under Rule 20.01 do not require medical evidence of competence."
*State v. Thompson*, 988 N.W.2d 149, 157 (Minn. App. 2023)

○ "The district court must specifically weigh all of the evidence presented, including any testimony from Thompson, and, as may be appropriate, make credibility findings."
*State v. Thompson*, 988 N.W.2d 149, 158 (Minn. App. 2023)

○ "In reviewing competency decisions, this court independently reviews the evidence to determine whether the district court gave "proper weight" to the evidence related to appellant's competence."
*State v. Sabahot*, A10-2174, p. 9 (Minn. App. Jan. 3, 2012)

○ "Even if the court does not think it is a 'good idea' for a defendant to choose self-representation, it is not the court's role to insert counsel between an unwilling defendant and that defendant's right of self-representation."
*State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997)

○ "A defendant who is competent to stand trial is competent to represent himself."
*State v. Sabahot*, A10-2174, p. 11 (Minn. App. Jan. 3, 2012)

## VI.   WORDS, TERMS, AND PHRASES OMITTED FROM ALL APPELLATE COURT ORDERS AND THE STATES RESPONSE

- Fraud / Fraudulent

- Patent

- Self-representation (beyond procedural aspects)

- Due Process

- Constitutional Rights

- Manipulated / Manipulation

- Misconduct

- Discovery Materials

- Bias

- Procedural / Procedural Irregularities

- Unjust

- Commitment

- Financial (incentives)

- Incentives

- Bruce Rivers

- YouTube

- Ineffective Assistance of Counsel

- External Influence

- Authorship (of documents)

29

- Jill Rogstad

- Chela Guzman-Weigart

- 'GuzmanC'

- metadata

- Timeline (discrepancies)

- Netflix

- Intellectual Property Theft

- InfiniSet

- Business

- Patent Fraud

- Surveillance

- Netflix Patent

- US 11,810,254

- InfiniSet Patent

- US 11,577,177

- Ethical Violations

- Coercion

- Forensic Evidence

- Circular Handling

- Judicial Integrity

- Chronological Event Timeline

- Rule 20.01 Report

- Forensic Psychology Standards

- Unethical

- Conflict of Interest

- Fraud on the Court

- Fraudulent Discovery Materials

- Trademark

- Minnetonka Police Report

- FBI Report

- FTC Report

- Special Ops Gear

- Prototype

- Engineering

- MattGuertin.com

- LinkedIn Searches

- Defense Intelligence Agency

- DARPA

- US State Department

- US Air Force

- US Air Force Academy

- USC School of Cinematic Arts

- Army Reserves

- US INDOPACOM

- Forcepoint

- 3Gimbals

Exhibit O | p. 31

- Military Simulation Training

- PhotoRobot

- Internet Archive

- Digital Forensics

- SIGGRAPH

- Paul Debevec

- Eyeline Studios

- Mark Roberts Motion Control

- Michael Biglow

- Internet Archive

Exhibit O | p. 32