UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MATTHEW D. GUERTIN<br><br>         Plaintiff,<br><br>v.<br><br>HENNEPIN COUNTY, a municipal entity;<br>KEITH ELLISON, in his official capacity as Minnesota Attorney General;<br>MARY MORIARTY, in her official capacity as Hennepin County Attorney;<br>CHELA GUZMAN-WEIGART, in her official capacity as Assistant County Administrator for Law, Safety, and Justice;<br>JULIA DAYTON-KLEIN, in her individual capacity;<br>GEORGE F. BORER, in his individual capacity;<br>DANIELLE C. MERCURIO, in her individual capacity;<br>DR. JILL ROGSTAD, in her official capacity as Senior Clinical Forensic Psychologist in the Fourth Judicial District;<br>DR. ADAM MILZ, in his official capacity with Hennepin County Mental Health;<br>JACQUELINE PEREZ, in her official capacity as Assistant Hennepin County Attorney;<br>BRUCE M. RIVERS, in his individual capacity.<br><br>         Defendants. | Case No: 24-cv-02646-JRT-DLM<br><br><br><br>**PLAINTIFF'S RESPONSE<br>TO DEFENDANTS' MOTIONS<br>TO DISMISS** |

## I.   INTRODUCTION

1. Plaintiff Matthew Guertin, proceeding pro se, respectfully submits this response to the motions to dismiss filed by all of the Defendants except for Bruce Rivers, who has failed to respond to Guertin's complaint.

1

2. The overwhelming and newly discovered evidence of fraudulent discovery materials, combined with the clear indications of a civil conspiracy, substantiate Plaintiff's claims and directly counter the arguments made by the Defendants in their respective motions.

## II.   DISCOVERY FRAUD AND VALIDATION OF INITIAL CLAIMS

3. The most crucial point that needs to be addressed is the newly obtained discovery materials provided to Guertin by Bruce Rivers on July 16, 2024.

4. This new discovery, which includes manipulated and missing images, directly correlates with the initial set of discovery that Plaintiff had already flagged as fraudulent.

5. The fraudulent nature of these materials not only serves to validate Plaintiff's initial claims but also directly ties Bruce Rivers, a defendant in this case, to the conspiracy.

6. Notably, Bruce Rivers remains the Plaintiff's defense counsel, despite multiple direct requests from Guertin for him to withdraw. This includes a pro se motion for substitute counsel that Guertin filed with the Hennepin County District Court on June 3, 2024, and the glaring conflict of interest arising from Rivers also being a Defendant in this very case.

7. Rivers' unwavering dedication to Guertin - his refusal to relinquish control and his determination to steer Guertin's case - while blatantly ignoring the numerous Minnesota Rules of Professional Conduct he continues to violate, is nothing short of an impressively absurd feat.

8. This, naturally, fits seamlessly into the series of absurdities that have come to define nearly every aspect of Guertin's ongoing adventure within the Hennepin County Courts.

**A.  Direct Correlation Between Initial and New Discovery Materials**

9. The new discovery set conspicuously lacks the same 28 images initially identified by Plaintiff as manipulated. The probability of this specific set of images being excluded by coincidence is astronomically low, thereby reinforcing the claim of intentional tampering.

| page-img# | 4/4/2024 - Michael Biglow Motion to Compel Discovery | | | | 7/16/2024 BRUCE RIVERS |
|---|---|---|---|---|---|
| | W-px | H-px | image-ratio | location of photo | Bruce RIvers July 16, 2024 Discovery Images |
| 22-39 | 1114 | 1889 | 1:1.696 | inside-Guertin-residence | MISSING |
| 23-40 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0197.JPG |
| 23-41 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0196.JPG |
| 24-42 | 1087 | 1885 | 1:1.734 | inside-Guertin-residence | MISSING |
| 25-43 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0201.JPG |
| 25-44 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0207.JPG |
| 26-45 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0203.JPG |
| 26-46 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0204.JPG |
| 27-47 | 1134 | 1939 | 1:1.710 | inside-Guertin-residence | MISSING |
| 28-48 | 1224 | 2153 | 1:1.759 | inside-Guertin-residence | MISSING |
| 29-49 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0189.JPG |
| 30-50 | 1214 | 1967 | 1:1.620 | inside-Guertin-residence | MISSING |
| 31-51 | 1109 | 1895 | 1:1.709 | inside-Guertin-residence | MISSING |
| 32-52 | 1129 | 1931 | 1:1.710 | inside-Guertin-residence | MISSING |
| 33-53 | 1159 | 1960 | 1:1.691 | inside-Guertin-residence | MISSING |
| 34-54 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 34-55 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 35-56 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 35-57 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 36-58 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0183.JPG |
| 37-59 | 831 | 1375 | 1:1.655 | inside-Guertin-residence | MISSING |
| 38-60 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 38-61 | 1431 | 805 | 16:9 | inside-Guertin-residence | MISSING |
| 39-62 | 1152 | 1976 | 1:1.715 | inside-Guertin-residence | MISSING |
| 40-63 | 1137 | 1912 | 1:1.682 | inside-Guertin-residence | MISSING |
| 41-64 | 1172 | 1851 | 1:1.579 | inside-Guertin-residence | MISSING |
| 42-65 | 1430 | 953 | 3:2 | inside-Guertin-residence | 23-0098_0012_520-TRS_DSC_0323.JPG |

10. The manipulation involves the generation of fake application windows that are being used to obscure the true contents of Guertin's laptop screen in which he had left an image of his self professed 'former CIA' welder displayed on it, with these fraudulent application windows including pixelation and inconsistencies that directly infer they were produced using an advanced ai image generation model of some sort.



11. This not only validates Plaintiff's claims but also implicates the Defendants in an ongoing conspiracy to obstruct justice.

**B.  Civil Conspiracy and Involvement of Defendants**

12. The alignment of fraudulent materials in both sets of discovery implicates both the prosecution and Bruce Rivers in a coordinated effort to undermine Plaintiff's defense.

13. This further substantiates Plaintiff's civil conspiracy claims, which are at the heart of this case.

14. The fraudulent discovery provided by Rivers aligns with the discovery previously supplied by Michael Biglow, reinforcing the existence of a broader conspiracy.



5

**C.  Validation of Monell Claims**

15. The irrefutable proof of manipulated and missing images supports Plaintiff's Monell claims against the municipality of Hennepin County.

16. Plaintiff had originally provided this fraudulent discovery to the Hennepin County Attorney's Office as well as the Minnesota Attorney Generals Office as part of his Minnesota Court of Appeals case, A24-0780, service requirements. Their failure to acknowledge or address these issues serves to validate Plaintiff's claims under Monell.

### III.   DISCREDITING THE FOUNDATION OF DEFENDANTS' ARGUMENTS

**A.  Undermining the Credibility of the Exam Reports**

17. The defendants' motions to dismiss are fundamentally flawed as they rely on the findings of the Rule 20.01 exam reports. However, the August 7 motion provides compelling evidence that thoroughly discredits the content of these reports, particularly those authored by Dr. Jill Rogstad and Dr. Adam Milz.

18. Dr. Rogstad's March 2023 report is riddled with inaccuracies, falsehoods, and omissions that seriously question its credibility.

19. The report labels numerous factual claims made by the Plaintiff as delusional, despite these claims later being proven true.

20. For instance, the report dismisses Guertin's claims about his patent being 'revolutionary' to the point that it would attract the attention of a huge corporation like Netflix, as 'persecutory delusions'. Yet, subsequent evidence, including a listing of Guertin's name, and patent number atop Netflix US Patnet 11,810,254, corroborates Guertin's assertions, thereby discrediting the report's conclusions.

21. Moreover, the report fails to consider critical evidence provided by Guertin, such as the January 12, 2023, police report where he presented substantial evidence of fraud to Officer Brandon Harris of the Minnetonka Police Department.

22. This omission highlights a serious flaw in the report's foundation, further undermining its validity.

23. Similarly, Dr. Milz's January 2024 exam report perpetuates these inaccuracies by continuing to assert that Guertin suffers from a delusional disorder, despite overwhelming evidence to the contrary.

24. The report also falsely attributes a history of substance abuse and psychosis to Guertin—claims that are directly contradicted not only by Guertin's medical records and long-term doctor's assessment, which show no such history, but also by his own actions.

25. Guertin has consistently demonstrated logical and rational thinking through the production, analysis, and filing of a substantial number of coherent and well-reasoned pro se court filings.

**B.   Constitutional Due Process Violations**

26. The flawed psychological evaluations used to justify Guertin's civil commitment represent a grave violation of his constitutional right to due process. The court has a duty to ensure that decisions about a person's mental competence are based on accurate and truthful information.

27. The manipulated and discredited exam reports fail to meet this standard, calling into question the legitimacy of the entire civil commitment proceeding.

**C.   Questioning the Motions' Validity**

28. The defendants' motions to dismiss rest on the assumption that the psychological evaluations supporting the civil commitment proceedings are valid. However, given the substantial evidence discrediting these evaluations, the motions themselves lack a credible foundation.

29. The court should consider the thorough discrediting of these reports and deny the defendants' motions to dismiss.

**D.   Violation of Plaintiff's Right to a Fair Trial**

30. The reliance on these discredited psychological evaluations as a basis for civil commitment and claims of incompetence has compromised Plaintiff's right to a fair trial. The use of flawed and manipulated reports to determine Guertin's mental state is unjustifiable and further invalidates the defendants' motions.

**E.   Civil Conspiracy and Systemic Corruption**

31. The discrediting of the exam reports also ties directly into the broader civil conspiracy claim.

32. The involvement of the same actors in both the flawed psychological evaluations and the introduction of fraudulent discovery materials suggests a coordinated effort to undermine Guertin's legal standing and supports his claims of systemic corruption. This further necessitates judicial intervention to correct these injustices.

## IV.  ADDITIONAL POINTS FROM DEFENDANTS' MEMORANDUMS

33. Upon review of Defendants' memorandums, several additional arguments can be effectively countered with the evidence presented in Plaintiff's August 7, 2024, motion for expedited preliminary injunction:

**Improper Service Argument:**

34. The argument regarding improper service is nullified by the fact that Hennepin County and other Defendants have responded through counsel. Their active participation in the case demonstrates that they were properly served, regardless of their current claims.

**Qualified Immunity:**

35. Defendants' assertions of qualified immunity are moot in light of the fraudulent discovery materials. The evidence shows intentional acts that go beyond mere negligence, implicating the Defendants in active wrongdoing.

**Failure to State a Claim:**

36. Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted. However, the new evidence of discovery fraud, directly linked to the Defendants, clearly substantiates Plaintiff's claims and underscores the necessity of judicial intervention to protect the Plaintiff's constitutional rights.

## V.   CONCLUSION

37. The newly presented evidence in Plaintiff's August 7 motion is not only compelling but irrefutably substantiates all of Plaintiff's initial claims.

38. The Defendants' motions to dismiss should be denied in their entirety, as the discovery fraud alone proves the existence of a coordinated conspiracy against Plaintiff. This conspiracy, which involves both the prosecution and Bruce Rivers, directly undermines the integrity of the entire judicial process.

39. It is also worth noting that while all other defendants have responded to the complaint, Bruce Rivers has failed to do so, raising concerns about his willingness to engage with the judicial process. Plaintiff respectfully requests that the Court consider this omission as further evidence of the seriousness of the allegations and allow this case to proceed to trial so that all the evidence can be thoroughly examined and justice can be served.

Dated:  August 14, 2024                                        Respectfully submitted,

　_/s/ Matthew D. Guertin_

Matthew David Guertin
Pro Se Plaintiff
1075 Traditions Ct.
Chaska, MN  55318
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

## VI.   CERTIFICATE OF COMPLIANCE

I certify that the foregoing response complies with the word limit set forth in Local Rule 7.1(f) of the United States District Court for the District of Minnesota, as it contains 1,422 words, excluding the caption, signature block, and this certificate of compliance.

Dated:  August 14, 2024              Respectfully submitted,

                                     _/s/ Matthew D. Guertin_

                                     Matthew David Guertin
                                     Pro Se Plaintiff
                                     1075 Traditions Ct.
                                     Chaska, MN  55318
                                     Telephone: 763-221-4540
                                     MattGuertin@protonmail.com
                                     www.MattGuertin.com