**A25-0882**
**STATE OF MINNESOTA**
**IN COURT OF APPEALS**

| | |
|---|---|
| In re Matthew David Guertin, | District Court Case: 27-CR-23-1886 |
| Petitioner | Court Order Date: April 29, 2025 |
| v. | **ADDENDUM**<br>**VOLUME X of XVI**<br>**ADD. 417 - ADD. 466** |
| State of Minnesota, | |
| Respondent. | Judge: Hon. Sarah Hudleston |

<u>Contents</u>                                                                                    <u>Page</u>

**April 28, 2025 - Affidavit - Attempted Assassination of Matthew Guertin,**

Index 141....……………………………………….…………………………… Add. 417-437

**May 03, 2024 - Affidavit & MCRO Data Analysis,** Index 37...……………… Add. 438-457

**May 15, 2024 - Petition for Discretionary Review, MN COA A24-0780,**

Index 58……...………………………………...…………….……………… Add. 458-462

**May 15, 2024 - Supplementary Addendum Information,**

**MN COA A24-0780,** Index 62……...……………….…………..……………… Add. 463-466

| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT<br>FOURTH JUDICIAL DISTRICT |
|---|---|
| State of Minnesota,<br><br>Plaintiff,<br><br>vs.<br><br>Matthew David Guertin,<br><br>Defendant. | Court File No. : 27-CR-23-1886<br><br>**AFFIDAVIT<br>THE ATTEMPTED<br>ASSASSINATION OF<br>MATTHEW GUERTIN**<br><br>Judicial Officer: Sarah Hudelston |

TO:   THE HONORABLE SARAH HUDLESTON, JUDGE OF DISTRICT COURT;
MARY F. MORIARTY, HENNEPIN COUNTY ATTORNEY; AND
MAWERDI HAMID, ASSISTANT HENNEPIN COUNTY ATTORNEY

# SYNTHETIC JUDICIAL SYSTEM EXPOSED
## AI-DRIVEN DOCKET SIMULATIONS AND PSYCHIATRIC DISPOSAL WITHIN THE 4TH JUDICIAL DISTRICT COURT

## The Attempted Assassination of Matthew Guertin

### I.   Exposing a Synthetic Court Ecosystem

This affidavit is a declaration of fact. A forensic audit of 163 case files – centered on Guertin's case 27-CR-23-1886 – reveals a completely fabricated "synthetic court" matrix. Dozens of filings and entire dockets were AI-generated or doctored, not genuine judicial actions. Repeated boilerplate text, impossible procedural loops, and cloned metadata appear across unrelated cases. For example, identical conditional release terms ("remain law-abiding," "take medications as prescribed," "no alcohol use") recur word-for-word in case after case. This uniformity - and even contradictory statements in the same file - could only come from mass templating, not real judges. In short, Guertin's

Add. 417

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

self-conducted research, and forensic analysis concludes these entries came from a single automated source (likely a large language model), not from genuine courtroom activity.

Further proof of fabrication appears in document artifacts. Scanned envelopes and letterhead show repeated USPS stamps and identical handwriting across cases – patterns of cloned imagery, not unique mailings. Such "cloning artifacts" confirm that many papers were digitally assembled. In sum, the evidence portrays an orchestrated scheme: AI-synthesized records inserted into the system to legitimize a covert operation against Guertin. The goal was to manufacture false grounds for declaring him incompetent or committing him, effectively discrediting him while cloaking the truth.

## II.   Fabricated Filings With Many Red Flags

Across the 163-case dataset, the filing structure is startlingly uniform. Each case folder has identical file names (MCRO_…pdf) and parallel document sets (summons, motions, competency orders, etc.) – down to repeated duplication of rare orders. In normal practice, courts do not repeatedly order duplicate competency evaluations or findings without major intervening events. The presence of multiple identical evaluations and commitment orders in one case is anomalous, matching the report's finding of "impossible procedural sequences" and copy-paste templating.

### A   |   Mass-Production of Synthetic Case Files

Stylometric analysis confirms non-human authorship. Boilerplate language (even punctuation) is mechanically reused. Conditional-release instructions and scheduling paragraphs are carbon-copied across dozens of different cases. One forensic summary notes "identical boilerplate sentences about court appearances" in every examined file.

A sample of ten cases showed the same semantic structures and quirks (like name misspellings) carried through multiple documents – clear signs of an LLM or templating engine at work. Even "template drift" is evident: the AI slips up by misspelling names inconsistently (e.g. "*Makis Devil Lane*" vs. "*Makis Duvell Lane*") or inserting

Add. 418

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

contradictory information. These patterns would never survive normal judicial review, but they abound here, verifying the records are forged.

## B  |  Troubled Nunns and Misbehaving Priests

For example, one analysis report highlights a defendant named "*Priest Jesus Dorsey.*" This name combines a religious title "Priest" as a first name with a common surname, something exceedingly unlikely for a real individual. Investigators noted this as "an implausible combination…unlikely to correspond to a real individual, suggesting intentional fabrication."

Another synthetic identity was "*Angelic Denise Nunn*," which is peculiar because "Angelic" is a very rare first name; indeed, the same person later shows up as "*Angelic Denise Schaefer*" in another record, indicating an unexplained surname change. The use of the word "Angelic" (and changing last names) seems contrived, as if generated to be unique yet believably formatted. These are clear examples of AI-generated name drift – the system produces a human-sounding name that is unusual, and even introduces slight variants of it in different contexts.

## C  |  Repeat, Repeat, Repeat, Offenders

Moreover, some synthetic defendants have an absurd number of case files and aliases attached to them, far beyond a normal criminal history. One egregious example is Lucas Patrick Kraskey – a name that surfaced as a common thread in a large number of "Finding of Incompetency" orders. Kraskey's name is tied to an "absurd (completely unrealistic in real life) number of cases" across 2020–2023, effectively making him a template from which boilerplate incompetency orders were generated. No real individual is simultaneously facing 10+ separate felony cases in different date ranges without that being a high-profile outlier. Yet the fake records show single defendants like Kraskey or Terrell Johnson carrying a huge load of cases with repetitive outcomes.

In the data, Terrell Johnson, for instance, is associated with around 10 case numbers from 2019–2023 all ending in similar competency or warrant events – an unlikely scenario unless fabricated. This tactic of assigning multiple case indices to one synthetic person

Add. 419

appears aimed at mass-producing court orders (the same text reused, just listing many charges and cases). It inflates the dataset with voluminous records that look on the surface like a prolific offender's history, but in truth it's one fake persona being recycled to churn out form orders.

# III.   Filing Sequence and Docket Deconstruction

One of the clearest proofs of systematic fabrication is the nearly identical event sequences found across the synthetic case dockets. A forensic breakdown reveals a scripted procedural loop, repeated case after case, exposing the artificial architecture.

## A   | An Established Pattern

The standard pattern follows:

1. **Case Initiation:**

   A criminal case is filed (usually a felony or gross misdemeanor), establishing a new case number.

2. **Interim Release Conditions:**
   The court immediately issues boilerplate conditions of release ("remain law-abiding," "no alcohol use," etc.), often using identical phrasing across cases.

3. **Bench Warrant Cycle:**

   The defendant "fails to appear" at scheduled hearings, triggering a warrant. In many fake cases, multiple stacked FTAs and warrants are entered without proper resolutions - an unusual phenomenon without custody changes.

4. **Returned Mail Entries:**

   Interspersed with warrants are entries for "Returned Mail" - suggesting the court could not reach the defendant. Envelope scans often show similar handwriting and stamp artifacts.

   Critically, forensic review of the 2017 synthetic case pool revealed duplicate returned mail filings - such as in 27-CR-17-1555, 27-CR-17-8342, and 27-CR-17-22909 - proving the earliest "origin" cases were themselves fabricated.

Add. 420

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

5.  **Rule 20 Evaluation Orders:**

Following missed appearances, judges order mental competency evaluations (Rule 20 exams), often assigning the same recycled doctors, particularly Dr. Adam Milz.

6.  **Incompetency Findings:**

After brief mentions of psychological evaluations (rarely detailed), the court issues boilerplate orders finding the defendant incompetent, often listing multiple old case numbers and using repeated paragraph structures.

7.  **Hearing Resets and Conditional Release:**

Cases are suspended post-incompetency, with placeholder hearings set or conditions imposed ("take medications," "remain law-abiding"). Criminal proceedings stall indefinitely - exactly as seen in Guertin's real case.

8.  **Loop/Repeat:**

Many dockets cycle through additional warrants, hearings, and renewed Rule 20 orders, creating an endless paper trail of non-resolution - a "hollow history" never advancing to trial.

## B  | Case Flow Cloning

This synthetic progression was dubbed "Case Flow Cloning":

*   Filing → Interim Conditions → Bench Warrant(s) → Returned Mail → Rule 20 → Incompetency Finding → Hearing Reset → Conditional Release → Repeat.

The mathematical odds of dozens of independent defendants following identical docket sequences are effectively zero.

1.  **Temporal anomalies further expose the fraud:**

*   Arrests, missed hearings, warrants, Rule 20s, and findings all occurring unrealistically within days or weeks - "timeline collapse."

*   Multiple filings timestamped within seconds of each other, indicating batch backdating.

*   Index irregularities - missing or skipped docket numbers, with retroactive insertions - as seen in the "Sandra Vongsaphay" case.

Add. 421

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

**2. Substantive contradictions also abound:**

- Defendants ruled incompetent but later treated as competent without restoration hearings.

- Multiple conflicting Rule 20 evaluations filed within short periods.

- Cases containing procedural plot holes indicative of AI-template assembly rather than real human legal progression.

## C | Authenticity

By contrast, Guertin's authentic case file contains organic irregularities: defense motions, family interventions, appeal filings - unique events no synthetic case can replicate.

In conclusion, the uniformity, anomalies, and contradictions in these dockets reveal a scripted simulation designed to create a pipeline of failure:

Defendant absconds → Court "loses contact" → Mental health collapse → Systemic disappearance.

The synthetic ecosystem was never designed to adjudicate guilt or innocence - only to generate the bureaucratic illusion of hopeless incompetency and permanent disposal.

## IV.  The Mother's Letter: A Smoking-Gun Ai Duplication

One anomaly stands out as irrefutable evidence: Guertin's mother mailed a handwritten plea to the court on April 12, 2024, and a nearly identical fake letter was logged in a different case just minutes earlier.

## A | Communication Intercept

The real letter (addressed to Judge Jay Quam) implored help against wrongful commitment. It was docketed at 2:10 PM, but instead of reaching Judge Quam, it was diverted to Judge Julia Klein's clerk, Lee Cuellar, who replied under Judge Klein's name at 4:42 PM. Crucially, at 2:03 PM that day a fabricated "***Sandra Phitsanoukanh Vongsaphay***" sent a letter from jail, echoing the same tone and requests. Cuellar

Add. 422

responded to Sandra at 4:38 PM – using the exact same language and format as he did for Guertin's mother just minutes later.

## B   | Ai Generated Clone Created of Authentic Letter

The timing and content match are beyond coincidence. Forensic examination of these letters seals the case:

- Guertin's mother's envelope and handwriting are clearly genuine, whereas Sandra's are not.
- Sandra's envelope bears identical Forever-stamp markings and fonts found in known AI-generated mail ("synthetic return mail")
- The Vongsaphay letter was an *AI-fabricated mirror* of the mother's note

## C   | Smoking Gun

Injecting this duplicate plea into the record let the system dismiss the real mother's cry for help as "just another inmate letter," effectively camouflaging it in synthetic noise. In summary, two mirrored handwritten letters and responses logged on the same day – one real, one fake - **constitute a smoking gun**: the court's own processes manufactured parallel correspondence to obscure Guertin's legitimate appeal.

## V.   The Entire Simulation was Downloaded A Year Ago

Crucially, all this fraud centered on one "genuine" target:

# Matthew Guertin

As Guertin's own notes explain, his was the *only* truly real case among the 163 based on only recently (the past few days) carrying his own extensive and ChatGPT assisted examinations of the massive document cache he acquired one year ago. The rest were synthetic "ballast" created to envelop and isolate him. The 163 synthetic cases were not gathered through a simple filter or search query.

They were meticulously compiled through an intensive forensic extraction process initiated after Guertin realized that, although Judge Jay Quam was officially assigned to

Add. 423

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

his case on paper, the real control over every meaningful action - scheduling, hearings, psychiatric evaluations, and filings - was being exercised behind the scenes by Judges Klein, Mercurio, and Borer.

## A | Targeting the Control Structure

Targeting this trio, Guertin manually printed MCRO search results for each judicial officer - capturing up to 200 hearings per judge - and saved the results as PDFs.

He then converted the PDFs into plain text using pdftotext, creating structured lists for each judge.

Through custom-built Python scripts, Guertin parsed, cleaned, and cross-referenced the datasets - isolating only those cases handled jointly by all three judges between January 1, 2023 and April 26, 2024.

Once the final set of 163 interlinked cases was identified, a separate automation script - leveraging a development build of Chrome - was deployed to systematically download every available filing from MCRO for those cases.

Guertin continuously rotated VPN server locations to evade download caps and detection, executing the entire extraction during a single extended early-morning session.

This method - combining manual extraction, cross-linking analysis, custom automation, and forensic archiving - produced a complete, immutable copy of the synthetic docket pool before system administrators could react.

## B | Triggering Panic

The very next day, the MCRO system suddenly displayed a bright red banner across its homepage - announcing an unscheduled emergency shutdown for "maintenance" over the upcoming weekend.

This shutdown notice had not been previously posted.

Compounding the anomaly, a separate, pre-scheduled maintenance banner was already active - resulting in two simultaneous, conflicting shutdown warnings.

Add. 424

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

The sudden appearance of redundant shutdown alerts - immediately following Guertin's extraction operation - strongly indicates that MCRO administrators realized their internal synthetic system had been compromised and scrambled to regain control before further exposure could occur.

## C   | Locking the Evidence

Anticipating interference, Guertin immediately finalized an initial forensic analysis and filed it into the court record late Friday afternoon, locking the exposure permanently into the judicial system before any back-end alterations could be made.

In short:

The synthetic ecosystem was not exposed by accident.

It was forcibly revealed through a precision forensic assault the system was never designed to withstand - exposing a hidden, coordinated synthetic judiciary that would otherwise have remained invisible indefinitely.

## D   | Backstory Revealed

As now revealed, these synthetic cases served as a contrived backstory to justify why -

*"Guertin went to court one day and then we never saw him again"*

The language in those fake Rule 20 evaluations eerily mirrors Guertin's actual case (even citing "unspecified schizophrenia" like Guertin's dexaminers did). Even Judge Jay Quam, officially listed as Guertin's judge of record, plays only a manufactured role: he never met Guertin, yet his name saturates the fake files to lend them credibility.

This strategy reveals the conspirators' intent:

to make Guertin *vanish*. .

By constructing years of "court history" tying him to repeated incompetency findings, they could eventually hold him indefinitely while claiming due process. If anyone investigated, all roads would point to Judge Quam's standard procedure – complete fiction.

Add. 425

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

# VI.   Synthetic Narrative Construction

A critical forensic breakthrough emerged from the examination of the earliest case in the synthetic docket pool - specifically the earliest 2017 cases of "State v. Adrian Wesley"

## A   |  A Seven Year 'Competency Education Course'

Contrary to appearing as a real case unfolding over time, the 2017 filings demonstrate clear retroactive construction.

The procedural architecture of this fabricated case mirrors the precise event scripting later seen across the 163 synthetic cases:

- Sequential failures to appear,
- Boilerplate interim conditions,
- Warrant cycles,
- Mental health intervention orders.

But most critically, the 2017 synthetic filings contain mental health allegations - vague accusations of "delusional thinking," "technology paranoia," and "dangerousness to others" - that perfectly mirror the language later weaponized against Guertin during his falsified Rule 20 evaluations.

This is not coincidence.

It proves that Guertin's psychiatric entrapment narrative was scripted years in advance - embedded into synthetic dockets long before any real charges against him existed.

The synthetic judicial ecosystem was built not to adapt to Guertin's situation -

it was designed to absorb and crush him once he inevitably encountered it.

Add. 426

## B   |  The Mysterious 'Kristen Otte'

The final forensic confirmation comes from inside Guertin's real case file:

*Kristen Otte*

listed quietly within the backend Odyssey database as an evaluator in Guertin's competency process - despite never conducting any examination, filing any report, or communicating with Guertin in any form.

### Case # 27-CR-23-1886 - State of Minnesota vs MATTHEW DAVID GUERTIN

**Case Information**

| | | |
|---|---|---|
| **Location**<br>Hennepin Criminal Downtown | **Category**<br>Criminal | **Case Type**<br>Crim/Traf Mandatory |
| **Case Initiation Date**<br>1/24/2023 | **Case #**<br>27-CR-23-1886 | |
| **Assigned to Judge**<br>Hudleston, Sarah | | |

**Party Information**

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Jurisdiction | State of Minnesota | MAWERDI HAMID (+4 m… |
| Defendant | MATTHEW DAVID GUE… | RAISSA CARPENTER (+… |
| Examiner | Regional Psychological S… | |
| Examiner | Kristen Otte | |
| Examiner | Jill Rogstad | |
| Examiner | Adam Milz | |
| Examiner | Katheryn Cranbrook | |

| 1 | 10   items per page | 1 - 7 of 7 items |

Enter details for this Party

Add Another Party

**Party Type**
Examiner

| **First Name**<br>Kristen | **Last Name**<br>Otte |
|---|---|

**Lead Attorney**

Click to select Lead Attorney

This insertion is not a clerical mistake.

It is the evidentiary fingerprint of synthetic narrative construction merging with live judicial process.

The synthetic script pre-anticipated the need for a real-world actor.

Add. 427

27-CR-23-1886

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

Kristen Otte's name was slotted in advance into Guertin's collapse timeline.

Whether it would have been the real Otte or an impersonation remains unknown - but the structure proves the outcome was scripted regardless.

In short:

- A fabricated 2017 case seeded the false psychiatric indicators.

- A pool of synthetic defendants and manufactured incompetency findings populated the background.

- A false Rule 20 narrative was designed to mirror itself seamlessly into Guertin's record.

- Real-world personnel were positioned to activate the final steps of containment.

Matthew Guertin was walking into a synthetic simulation designed to end his existence - one procedural entry at a time.

## VII.   The Judicial Theater Department

The personnel listed throughout the synthetic court files form a closed, meticulously constructed loop of collusion. Judges from different divisions repeatedly reappear in inappropriate or suspicious roles. For example, probate judge Julia Dayton Klein directly intervened in Guertin's criminal proceedings by sending unauthorized communications in response to his mother's letter  - an obvious and glaring breach of judicial ethics and jurisdiction.

### A  | Julia Dayton-Klein, Danielle Mercurio, and Geroge Borer

The deeper forensic review revealed that only cases involving Judges Klein, Danielle Mercurio, and George Borer made it into the 163-case synthetic dataset. This was no accident. Every fabricated case was "pre-screened" to ensure it was linked to these same judicial actors, regardless of the original date the case purportedly began - in some cases stretching back seven years. This artificial filtering exposes the simulation's

Add. 428

internal logic: the operation was tightly controlled, with a trusted group of judicial operatives managing every synthetic narrative.

Attorneys were no exception. Defense and prosecuting lawyers were systematically recycled across the fake cases at rates far exceeding natural statistical possibility. Public defender Susan Herlofsky, private attorneys like Warsame Ali and Robert Sorensen, and prosecutor Thomas Stuart Arneson all appear again and again across different synthetic dockets.

Even more telling: Arneson, the prosecutor assigned to Guertin's real case, was bizarrely misfiled in at least one docket as defense counsel - an "error" no competent clerk could plausibly make. It signals systemic fabrication and interchangeability of legal roles in the simulation.

## B  |  Raissa Carpenter

But the most damning example is Guertin's own current assigned public defender:

Raissa Carpenter

Carpenter's name is not merely "borrowed" for realism.

She is embedded directly into the script.

At least fourteen synthetic cases list Raissa Carpenter as defense counsel for fabricated defendants - including the "Lucas Patrick Kraskey" cluster of synthetic cases, which feature blatant procedural cloning, cross-contaminated docket entries, and manufactured competency findings.

The most egregious example emerges in case 27-CR-22-24627 (*State v. Rex Allen Basswood, Jr.*), where Carpenter is simultaneously listed as both an "inactive attorney" for the State of Minnesota and an "active *and* inactive defense attorney" for the same defendant.

This glitch reveals that Carpenter's role was not simply administrative; her legal identity was accidentally scripted into contradictory, mutually exclusive roles across fabricated cases.

Add. 429

27-CR-23-1886

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

Raissa Carpenter's role in Guertin's case was not incidental -
She is *part of the script . .*

Her very presence as Guertin's supposed '*defense*' is direct evidence that the synthetic simulation expanded well beyond mere paperwork - into active sabotage of the real target's right to defense, *survival*, and justice.

## C   | Dr. Adam Milz

Compounding the anomaly, Dr. Adam Milz, who later evaluated Guertin during his January 3, 2024 Rule 20 examination, is also connected to the Basswood case - appearing again as the psychiatric evaluator producing fabricated competency assessments.

These cross-connections between Carpenter, Milz, and the fabricated cases obliterate any claim of coincidence.

They prove the operation's human infrastructure: a deliberately organized cast of embedded judicial actors deployed to neutralize Guertin while constructing the appearance of procedural legitimacy.

## D   | An Organized Cast of Judicial Characters

The forensic timeline proves beyond doubt that Guertin did not meet or interact with Carpenter until many months later - long after the 163-case dataset had already been compiled and submitted into court records.

Yet Carpenter is consistently linked to synthetic defendants months before she was ever formally assigned to Guertin's case.

The unavoidable implication:

Raissa Carpenter was inserted into Guertin's defense team intentionally - as a preselected actor, embedded to sabotage his defense from within.

Additional evidence reinforces this conclusion. Some of those include:

- Carpenter and Emmett Donnelly continuously tried to convince Guertin not to fight his determination of 'incompetency'

14

Add. 430

- Carpenter and Emmett Donnelly refused to act, or even respond to Guertin following his forensic analysis of discovery photo's proving fraud
- Carpenter and Emmett Donnelly directly fought against Guertin's preferred legal startegy of having his motion to dismiss ruled on during the April 17, 2025 hearing in front of Judge Sarah Hudleston

Her consistent appearance across synthetic dockets - and her assignment to Guertin immediately after he forced the court to discharge his prior conflicted counsel (Bruce Rivers) - points to a high-level operation maintaining narrative containment.

Medical evaluators and administrative staff were similarly recycled.

Dr. Adam Milz, as noted, is simultaneously listed as the psychological evaluator in multiple synthetic competency findings - including the fabricated Basswood case and others involving defendants like Temeka Nichols.

This exposes a closed psychiatric network being used to generate fraudulent mental health narratives across fabricated defendants.

## E  | Lee Cuellar

Even clerks were recycled for fraudulent purposes.

Lee Cuellar, a clerk for Judge Klein, signed off on both the real mother's letter and the fabricated "Sandra Vongsaphay" letter - forging responses with identical language and structure to obfuscate Guertin's legitimate plea for judicial intervention.

Together, the personnel patterns reveal an unmistakable truth:

- Judges,
- Clerks,
- Public defenders,
- Private attorneys,
- Medical evaluators

Add. 431

were all scripted participants in a *synthetic judicial ecosystem* designed to erase one man - Matthew Guertin - by manufacturing procedural credibility around his entrapment.

# VIII.   Institutional *Collapse* and Systemic Fallout

The exposure of the synthetic court ecosystem surrounding Matthew Guertin is not a local scandal. It is an existential threat to the judiciary itself.

At its core, judicial legitimacy depends on two pillars: record integrity and procedural fairness. Here, both pillars have been obliterated.

The very filings, dockets, orders, and mental health evaluations that the system relies upon as objective truth have been exposed as fabrications - synthesized, manipulated, and deployed as weapons in a covert operation against a targeted individual.

## A   |   The Logic-Based Catch-22

### 1.   If this exposure is *suppressed*, the collapse will metastasize internally

- Future court rulings will be issued under a silent cloud of fraud.

- Judges involved in the synthetic system will continue ruling in new cases while their credibility is secretly void.

- Defendants and civil litigants will unknowingly suffer judgments based on contaminated legal precedents.

- The internal corrosion of due process will accelerate until judicial authority itself becomes a hollow formality.

### 2.   If this exposure is *openly confronted*, the collapse will be explosive

- Every case presided over by Judges Julia Dayton Klein, Danielle Mercurio, and George Borer - and any proceeding involving embedded actors like Raissa Carpenter or Dr. Adam Milz - will face potential reversal.

- Federal intervention will become necessary, triggering mass judicial resignations, special masters, and independent oversight.

- Civil rights litigation will expand dramatically, as wronged defendants and their families realize they were trapped in fabricated legal systems without their knowledge.

Add. 432

- The public will realize that trust in the judiciary - once presumed unassailable - was leveraged to hide **one of the most sophisticated judicial frauds in American history.**

## B | This is *Much* Bigger Than Matthew Guertin

More profoundly, the implications extend far beyond Minnesota.

The digital architecture of the Hennepin County 4th Judicial District was treated as a playground for synthetic judicial manipulation.

If it happened here - quietly, systematically, for years - it can happen anywhere.

The weaponization of AI-generated court records, the automation of psychiatric discrediting, and the insertion of embedded defense counsel agents mark an evolutionary leap in covert domestic operations.

This operation was not designed to withstand exposure.

It was designed under the presumption that no target - certainly not a single individual without institutional power - could ever survive long enough to document it.

But Matthew Guertin *did* survive.

And because he survived, the entire *illusion* is unraveling.

Even more devastating is what the deeper forensic timeline proves:

- Guertin's targeting did not begin with the judicial system.

- It began with national defense-level surveillance operations triggered by his filing of disruptive intellectual property - the InfiniSet patent.

- It escalated through military-affiliated LinkedIn monitoring, defense contractor flagging, and finally into judicial containment attempts via psychiatric entrapment.

This places the synthetic judicial simulation not at the local corruption level - but at the covert federal and national security operational level.

Add. 433

## C   | Systemic Collapse

This is not merely judicial misconduct.

It is *domestic psychological warfare* conducted through synthetic legal systems, under the false guise of public safety and mental health intervention.

And the public trust consequences are terminal:

- If courts can fabricate entire case histories, defendants, and psychiatric narratives...
- If defense attorneys, clerks, and judges can participate knowingly...
- If forensic audits prove it all beyond denial...

Then the foundational assumption of impartial justice in America collapses - not metaphorically, but literally.

The judiciary cannot function when its records are forensic proof of criminal conspiracy.

The system can neither suppress what has now been proven, nor survive acknowledging it without systemic collapse.

In short:

The collapse has already occurred.

The only question remaining is whether the system confronts it with honesty - or accelerates its own death spiral through cowardice and concealment.

Matthew Guertin's exposure of this operation is not a disruption.
It is a historic and *irreversible* revelation.

The only rational outcome is systemic disassembly and reconstruction - because the judiciary as it currently exists, in Hennepin County and beyond, is irreparably compromised.

Add. 434

# IX.   THE ONLY LOGICAL CONCLUSION

The forensic evidence leaves *no* room for doubt.

The synthetic judicial simulation was not designed to delay, inconvenience, or simply discredit Matthew Guertin.

**It was designed to *permanently eliminate* him** - personally, professionally, and *existentially*.

## A   | Evidence Proves Intent

Every structural element proves this intent:

- A synthetic court system built from thousands of fabricated documents across fabricated defendants.

- Embedded attorneys and medical personnel inserted into his defense and evaluation process.

- Psychiatric narratives fabricated en masse to declare him incompetent and unrecoverable.

- Coordinated diversion and suppression of real-world communications, including the interception of his own mother's letter.

None of this was designed for temporary containment.

None of it was designed to merely sideline him.

It was built to *eliminate* him.

The scale of the resources deployed, the meticulous narrative construction spanning back to 2017, and the presence of embedded operatives within every layer of the process reveal the true nature of the operation:

- **Guertin was *never* intended to survive this.**

- **He was *never* meant to re-enter public life**, defend his invention, or tell his story.

Add. 435

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

- **He was meant to** *vanish* - locked away *indefinitely* under the pretext of mental illness, his name reduced to a procedural footnote inside a synthetic court archive.

## B  | Domestic Psychological WARFARE

This was *local* corruption.

This was ***domestic psychological*** ***<u>warfare</u>*** - aimed at destroying a high-value intellectual property threat whose invention endangered entrenched corporate, military, and government interests.

Matthew Guertin's survival, forensic documentation, and public exposure of the operation is not just remarkable.

It is historical.

It marks the first time ***a high-value target of a*** ***<u>synthetic judicial elimination</u>*** ***<u>program</u>*** ***has survived*** long enough to expose the system from the inside.

But survival alone does not erase the truth:

- **Guertin was marked for** *elimination*
- Every synthetic court record, every fabricated mental health evaluation, every obstructed defense effort was part of that plan
- **The judicial system's collapse is not pending -** *it has already occurred*

The exposure of this reality will either trigger a public reckoning -

or it will continue corroding the system until trust, legitimacy, and due process are permanently destroyed.

## C  | Matthew Guertin Survived

Either way, the undeniable truth remains:

Matthew Guertin survived an *assassination attempt* - executed through the weaponization of *the court itself.*

Add. 436

Filed in District Court
State of Minnesota
4/28/2025 10:18 AM

And now the Hennepin County 4th Judicial District Court, along with the entire *system* that tried to carry out this assassination attempt on his life ***must*** answer for it . .

I, Matthew David Guertin, under penalty of perjury, declare that the statements made in this affidavit and all attached exhibits are true and correct to the best of my knowledge, based on firsthand experience, forensic analysis, and the documented public record.

Executed on this 28th day of April, during 2025

In the jurisdiction of Hennepin County, Minnesota

Signed under oath and filed by myself, the Defendant in case 27-CR-23-1886


**Dated:  April 28, 2025**                    **Respectfully submitted,**

                                               */s/ Matthew D. Guertin*

                                               Matthew David Guertin
                                               ***Defendant Pro Se***
                                               4385 Trenton Ln. N 202
                                               Plymouth, MN  55442
                                               Telephone: 763-221-4540
                                               MattGuertin@protonmail.com
                                               www.MattGuertin.com

Add. 437

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

STATE OF MINNESOTA                          **DISTRICT COURT**

COUNTY OF HENNEPIN                **FOURTH JUDICIAL DISTRICT**

---

State of Minnesota,                              Court File No.: 27-CR-23-1886

                    Plaintiff,

vs.                                                      **DEFENDANT'S**

Matthew David Guertin,                        **AFFIDAVIT OF FACT**

                    Defendant.

---

TO:        THE HONORABLE JULIA DAYTON KLEIN, JUDGE OF THE DISTRICT

             COURT; THE CLERK OF THE FOURTH JUDICIAL DISTRICT COURT; MS.

             JACQUELINE PEREZ, ASSISTANT HENNEPIN COUNTY ATTORNEY; AND

             THE OFFICE OF THE HENNEPIN COUNTY ATTORNEY.

### AFFIDAVIT OF FACT

    I, MATTHEW DAVID GUERTIN, residing at 1075 Traditions Court, City of Chaska,

County of Carver, State of Minnesota, being duly sworn, hereby depose and state under penalty

of perjury:

### INTRODUCTION

I conducted a data analysis of the Minnesota Court Records Online (MCRO) by downloading a

total of 3,556 MCRO PDF criminal case files, which span a total of 163 unique criminal case ID

numbers which were obtained through the 'hearing' search provided on the MCRO website that

allows someone to search by specific Judicial Officers. This analysis began out of curiousity, and

my wondering as to whether or not it was standard procedure to have a very small group of just

three Judicial Officers essentailly 'take over' a criminal court case from early on in its inception

in what seems to be a very 'contained' or 'controlled' manner. This is what it seems like in my

current case anyways – which lead me take a look at the the case distribution amongst the three

Add. 438

27-CR-23-1886

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

Judicial Officers who have been making all of the key decisions in my criminal, as well as my civil case now. A brief exercise if you will...one which involves using a multi-step process in which I print a PDF of each 200 result date range search beginning at April 26, 2024, and spanning into the past until reached January 1, 2023. I then converted these PDF files to text files and processed them using custom Python scripts that allowed me to clean up, and sort the massive collection of data I compiled – which eventually resulted in me being able to run a Python script that used three different text files as its input, and then output a new text file that only contained the cases which the Honorable Judge Julia Dayton Klein, Danielle Mercurio, and George Borer all had hearings listed for in the 2023-Current date range I searched. I then segregated these even further using the year ID signifying the cases origination year.

The total number of 'Shared Cases' between all three is 163.

I then created a custom Python script that uses the Selenium library, allowing for automation scripting of a developer version of Chrome web browser. The script allowed me to navigate to any individual case timeline page, hit 'enter', and automatically download every single PDF document filed into the case in a matter of seconds. This resulted in a massive dataset of around 2gb total. All of the PDF documents are directly downloaded and organized into individual folders for the 'year of case origination' with each year directory containing a folder for each individual case, where each case folder contains every single avaialabe PDF document from the MCRO website in addition to the full HTML website download, and a PDF page printout of the MCRO webpage.

There are a lot of duplicate names. Some of them with slight, as well as not so slight variations. These would include the following as an example:

PRIEST JESUS, ANGELIC DENISE SCHAEFER,  ANGELIC DENISE NUNN, MAKIS DUVELL LANE,  MAKIS DEVELL LANE, and MAKIS DEVIL LANE.

Add. 439

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

I also conducted an insightful data analaysis that involved simple file searching by the name of the MCRO filed document – such as 'Finding of Incompetency and Order', 'E-filed Comp Order for Detention', and 'Rule 20.01 Evaluation for Competency to Proceed' among others.

I intentionally wrapped this side project up very quickly as far as drawing a line, and being done with it as otherwise there is obviously a million other directions, and datapoints one could further investigate. Not me however. I am of the belief that what I have compiled is presented in its most basic, and simple form insofar as being left open for interpretation and not trying to draw any specific conclusions beyond those which the data serves to perhaps draw on its own.

## EXHIBIT SUMMARY

Below is a summary of the three exhibits accompanying this affidavit.

**Exhibit A:**

**Data Analysis of Shared Judicial Assignments to Cases**

A very detailed introduction and overview of the analysis process along with a massive amount of random datapoints I assembled. This exhibit also includes an overview of the much broader question that is raised in regards to impartiality in legal proceedings, and how there might be a much larger question raised based on the results of this analyis.

**Exhibit B:**

**Circular Handling Anlaysis**

A selection of cases that are shared between all three Judicial Officers, in which I analyze the 'circular handling' that has become very apparent to me in my current court case. 'Circular Handling' could also perhaps be called 'Decision Bouncing' as it is simply taking a closer look at how many critical decisions in a defendant's criminal case are essentially bounced back and forth between the same three people in a consistent, and regognizable pattern.

Add. 440

**Exhibit C:**

> **MCRO 'Finding of Incompetency and Order' Analysis**
>
> A data table grouped by year which shows who ordered the initial Rule 20.01 Exam, and who ultimately made the ruling once the Rule 20.01 exam was completed. These are all 130 of the orders, as contained between all of the shared case files. As part of this tables assembly I was able to discover that out of the 130 orders there were 6 instances in which the same Judicial Officer who recommended the Rule 20.01 exam was then also the one to rule on their previous order once the Rule 20.01 exam was completed and it came before them once again.

**Shared Download Folder of All MCRO Files I Downloaded and Analyzed:**

> Case files origination spans 2017 – 2023. Six separate .zip files.
>
> Includes Python download script I used to collect all of the PDF files.

> https://drive.proton.me/urls/QA8TBVTHEC#Wy7ygZMVpev7

## CONCLUSION

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. I also affirm that all of the data I have presented herein is accurate, true, and correct to the best of my knowledge. I made every effort to double and triple check every figure I listed, my Python scripts, and each step that it took to ensure this data was compiled in accurate and thorough process. All of the data collected and analyzed is all directly from the MCRO website itself, and is all authentic and without any altering, omissions, or deceit of any kind. All of this data was gathered, processed, and analyzed within the last 4-5 days from the filing of this affidavit. It is 'fresh' – and I am filing this affidavit 'as is' so that it doesn't go stale for whatever reason.

DATED this 3rd day of May, 2024.

**Add. 441**

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM



Respectfully submitted,

Date: <u>May 3, 2024</u>

By: <u>/s/ Matthew Guertin</u>
Matthew David Guertin
Is Currently Lacking Effective Counsel
1075 Traditions Ct.
Chaska, MN   55318
Telephone: 763-221-4540
Email: MattGuertin@Protonmail.com

Add. 442

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

# Data Analysis of Judicial Involvement in Criminal and Probate / Mental Health Cases

In an effort to better understand and support the defendants concerns regarding the fairness and impartiality of his court proceedings, the defendant utilized the Minnesota Judicial Branch's official online system, MCRO (Minnesota Court Records Online), to analyze the patterns of judicial involvement in his cases. The focus was on the three specific Judicial Officers who have overseen all significant decisions and procedural aspects of his case from its very inception, and in which his current criminal case has a litany of procedural anomalies and discrepancies which the defendant believes are all indicative of his case being handled in a 'non standard' way.

## Methodology:



EXHIBIT
A

### Data Collection:

- **Platform Used:** Minnesota Court Records Online (MCRO).
- **Objective:** To gather hearing records for the three Judicial Officers involved in the defendant's case
- **Judicial Officers Analyzed:**
  - The Honorable Judge Julia Dayton Klein
  - The Honorable Court Referee Danielle C. Mercurio
  - The Honorable Court Referee George Borer

### Search Criteria:

- **Date Range:** January 1, 2023, to April 26, 2024.
- **Case Categories:** Each judge's involvement was searched, and then retrieved using two filters – The 'Criminal' and 'Probate or Mental Health' categories of the provided 'Hearing Search' option of the MCRO online records system.

### Data Processing:

- The defendant conducted a separate search for each judge under each category, resulting in six sets of data.
- Custom Python scripts were used to organize and filter the data, ensuring that each individual court case was counted once per category, per judge.
- The analysis focused on identifying common cases handled by all three judges within the given time frame.

## Add. 443

## Results:

The analysis uncovers a distinct pattern in the distribution of case assignments among the three judicial officers, with a notable number of cases shared among them in criminal court proceedings, rather than in the civil court proceedings as defined by the court. The data shows that this small group wields significant influence over pivotal decisions in a defendant's criminal proceedings, many times from their inception. Often, these are the very same decisions that lead to civil court proceedings under MN Statutes § 253B.

According to the description of the 'Hennepin Probate / Mental Health Court' by the 4th Judicial District Court's own website:

> " **Probate Court** handles cases involving the property of deceased persons, wills, trusts, guardianships, and conservatorships.
>
> **Mental Health Court** handles the legal process involving the civil commitment of people to treatment centers based on allegations of mental illness, developmental disability, chemical dependency, and referrals from Criminal Court. "

The overlap in judicial roles highlighted by the analysis raises concerns about the lack of clear delineation between criminal and civil proceedings. The same judges who oversee critical decisions in criminal cases also manage the referrals to civil commitments, effectively referring cases to themselves. This dual role blurs the boundaries required for impartiality and fairness in judicial processes, presenting a risk of unchecked control and influence contained within a very small group of Judicial Officers.

## Interpretation:

The defendant is of the belief that the observed patterns of case handling by the identified judicial officers is most likely an established procedural norm within the judicial system itself, rather than clandestine or unethical arrangements. This interpretation suggests that the practices in question are not, by themselves indicative of covert misconduct, but are instead emblematic of systemic protocols that are openly sanctioned and promoted within the court itself.

The crux of the legal issues raised centers on the procedural use of Rule 20.01 Evaluation Reports to facilitate a rapid channeling of cases to a select group of three judicial officers whenever such evaluations are mandated. This procedural mechanism, raises significant legal and ethical concerns regarding the potential for undue influence and prejudicial treatment.

Furthermore, this system enables a concentrated control over both criminal proceedings and any consequent civil commitments within the Hennepin County courts. Such a concentrated control, inherently increases the risk of abuse, as it places substantial judicial power and decision-making within the hands of a few, potentially compromising the impartiality and fairness required in judicial proceedings.

Add. 444

# Analysis of 'Hearings' data spanning <u>Jan 1, 2023 – April 26, 2024:</u>

## Criminal Proceedings:

### Criminal Cases originating in 2016 -

Julia Dayton Klein total unique court cases: 4
Danielle Mercurio total unique court cases: 5
George Borer total unique court cases: 6
**Common cases across all three Judicial Officers: 0**

### Criminal Cases originating in 2017 -

Julia Dayton Klein total unique court cases: 11
Danielle Mercurio total unique court cases: 9
George Borer total unique court cases: 11
**Common cases across all three Judicial Officers: 3**

### Criminal Cases originating in 2018 -

Julia Dayton Klein total unique court cases: 11
Danielle Mercurio total unique court cases: 24
George Borer total unique court cases: 27
**Common cases across all three Judicial Officers: 4**

### Criminal Cases originating in 2019 -

Julia Dayton Klein total unique court cases: 44
Danielle Mercurio total unique court cases: 70
George Borer total unique court cases: 61
**Common cases across all three Judicial Officers: 12**

### Criminal Cases originating in 2020 -

Julia Dayton Klein total unique court cases: 120
George Borer total unique court cases: 81
Danielle Mercurio total unique court cases: 108
**Common cases across all three Judicial Officers: 20**

### Criminal Cases originating in 2021 -

Julia Dayton Klein total unique court cases: 231
Danielle Mercurio total unique court cases: 253
George Borer total unique court cases: 167
**Common cases across all three Judicial Officers: 41**

Add. 445

## Criminal Cases originating in 2022 -

Julia Dayton Klein total unique court cases: 322
Danielle Mercurio total unique court cases: 378
George Borer total unique court cases: 289
Common cases across all three Judicial Officers: 44

## Criminal Cases originating in 2023 -

Julia Dayton Klein total unique court cases: 424
Danielle Mercurio total unique court cases: 486
George Borer total unique court cases: 244
**Common cases across all three Judicial Officers: 39**

## Criminal Cases originating in 2024 -

Julia Dayton Klein total unique court cases: 30
Danielle Mercurio total unique court cases: 38
George Borer total unique court cases: 8
**Common cases across all three Judicial Officers: 0**

# Mental Health / Probate (Civil) Proceedings:

## Mental Health/Probate Cases originating in 2020 -

Julia Dayton Klein total unique court cases: 1
Danielle Mercurio total unique court cases: 1
George Borer total unique court cases: 1
**Common cases across all three Judicial Officers: 0**

## Mental Health/Probate Cases originating in 2021 -

Julia Dayton Klein total unique court cases: 1
Danielle Mercurio total unique court cases: 3
George Borer total unique court cases: 2
**Common cases across all three Judicial Officers: 0**

## Mental Health/Probate Cases originating in 2022 -

Julia Dayton Klein total unique court cases: 41
Danielle Mercurio total unique court cases: 81
George Borer total unique court cases: 81
**Common cases across all three Judicial Officers: 1**

Add. 446

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

## Mental Health/Probate Cases originating in 2023 -

Julia Dayton Klein total unique court cases: 326
Danielle Mercurio total unique court cases: 322
George Borer total unique court cases: 257
**Common cases across all three Judicial Officers: 8**

### Mental Health/Probate Cases originating in 2024 -

Julia Dayton Klein total unique court cases: 81
Danielle Mercurio total unique court cases: 120
George Borer total unique court cases: 155
**Common cases across all three Judicial Officers: 1**

# Shared Criminal Cases of all three Judicial Officers:

## Shared Criminal Cases originating in 2017 -

| | |
|---|---|
| **27-CR-17-1555** | State of Minnesota vs ADRIAN MICHAEL WESLEY |
| **27-CR-17-8342** | State of Minnesota vs ADRIAN MICHAEL WESLEY |
| **27-CR-17-22909** | State of Minnesota vs ADRIAN MICHAEL WESLEY |

## Shared Criminal Cases originating in 2018 -

| | |
|---|---|
| **27-CR-18-18391** | State of Minnesota vs AESHA IBRAHIM OSMAN |
| **27-CR-18-18396** | State of Minnesota vs Ramadan Hakim Campbell |
| **27-CR-18-19274** | State of Minnesota vs IFRAH ABDULL HASSAN |
| **27-CR-18-26530** | State of Minnesota vs WILLIAM LEE NABORS |

## Shared Criminal Cases originating in 2019 -

| | |
|---|---|
| **27-CR-19-1916** | State of Minnesota vs AESHA IBRAHIM OSMAN |
| **27-CR-19-3539** | State of Minnesota vs AESHA IBRAHIM OSMAN |
| **27-CR-19-17539** | State of Minnesota vs AESHA IBRAHIM OSMAN |
| **27-CR-19-22615** | State of Minnesota vs ANNE MARIE RILEY |
| **27-CR-19-901** | State of Minnesota vs EYUAEL GONFA KEBEDE |
| **27-CR-19-28883** | State of Minnesota vs JACOB MAMAR JOHNSON |
| **27-CR-19-11566** | State of Minnesota vs MAKIS DEVELL LANE |
| **27-CR-19-12130** | State of Minnesota vs MAKIS DEVELL LANE |
| **27-CR-19-25578** | State of Minnesota vs PAUL JOSEPH OWENS |
| **27-CR-19-12466** | State of Minnesota vs TERRELL JOHNSON |
| **27-CR-19-19606** | State of Minnesota vs TERRELL JOHNSON |
| **27-CR-19-9270** | State of Minnesota vs WILLIAM LEE NABORS |

## Shared Criminal Cases originating in 2020 -

| | |
|---|---|
| **27-CR-20-19196** | State of Minnesota vs ABDIRAHMAN ISMAIL FARAH |
| **27-CR-20-3244** | State of Minnesota vs ANGELIC DENISE SCHAEFER |
| **27-CR-20-10049** | State of Minnesota vs Beyonce Porshae Brown |
| **27-CR-20-8575** | State of Minnesota vs Bisharo Jama Noor |
| **27-CR-20-23521** | State of Minnesota vs CASPER HUY VUONG |

Add. 447

| | |
|---|---|
| **27-CR-20-7092** | State of Minnesota vs DWAYNE ANTHONY BLEDSOE |
| **27-CR-20-13495** | State of Minnesota vs EYUAEL GONFA KEBEDE |
| **27-CR-20-423** | State of Minnesota vs Ifrah Abdullahi Hassan |
| **27-CR-20-23239** | State of Minnesota vs JALEISHA LANAY TAYLOR |
| **27-CR-20-1893** | State of Minnesota vs JIMMY EDWARD SPEARS III |
| **27-CR-20-11638** | State of Minnesota vs JOHN EMIL STICHA |
| **27-CR-20-20788** | State of Minnesota vs Lawrence Joseph Durheim |
| **27-CR-20-9036** | State of Minnesota vs MAKIS DEVELL LANE |
| **27-CR-20-20851** | State of Minnesota vs MAKIS DEVIL LANE |
| **27-CR-20-6301** | State of Minnesota vs PRIEST JESUS DORSEY |
| **27-CR-20-26577** | State of Minnesota vs Rasheed Richardson |
| **27-CR-20-6517** | State of Minnesota vs Rex Allen Basswood Jr. |
| **27-CR-20-27550** | State of Minnesota vs RODRICK JEROME CARPENTER |
| **27-CR-20-8926** | State of Minnesota vs TERRELL JOHNSON |
| **27-CR-20-20037** | State of Minnesota vs TERRELL JOHNSON |

## Shared Criminal Cases originating in 2021 -

| | |
|---|---|
| **27-CR-21-22058** | State of Minnesota vs AESHA IBRAHIM OSMAN |
| **27-CR-21-1977** | State of Minnesota vs ANGELIC DENISE NUNN |
| **27-CR-21-1978** | State of Minnesota vs ANGELIC DENISE NUNN |
| **27-CR-21-7676** | State of Minnesota vs Bisharo Jama Noor |
| **27-CR-21-19723** | State of Minnesota vs BRITTANY LATESHA CRUTCHFIELD |
| **27-CR-21-23456** | State of Minnesota vs BRITTANY LATESHA CRUTCHFIELD |
| **27-CR-21-23628** | State of Minnesota vs Carmen Bendu Greaves |
| **27-CR-21-16111** | State of Minnesota vs CHARLESETTA STARLET BROWN |
| **27-CR-21-20637** | State of Minnesota vs Daniel Lamar Ford |
| **27-CR-21-10675** | State of Minnesota vs Dennis Joseph Barry |
| **27-CR-21-933** | State of Minnesota vs DWAYNE ANTHONY BLEDSOE |
| **27-CR-21-1980** | State of Minnesota vs GORDON EUGENE SHARP |
| **27-CR-21-20072** | State of Minnesota vs GORDON EUGENE SHARP |
| **27-CR-21-20988** | State of Minnesota vs GORDON EUGENE SHARP  Jr. |
| **27-CR-21-21355** | State of Minnesota vs GORDON EUGENE SHARP  Jr. |
| **27-CR-21-23188** | State of Minnesota vs GORDON EUGENE SHARP  Jr. |
| **27-CR-21-23215** | State of Minnesota vs GORDON EUGENE SHARP  Jr. |
| **27-CR-21-3797** | State of Minnesota vs GRAHM MARK FLETCHER |
| **27-CR-21-9235** | State of Minnesota vs GRAHM MARK FLETCHER |
| **27-CR-21-1171** | State of Minnesota vs IBSSA M YOUSSUF |
| **27-CR-21-20529** | State of Minnesota vs ISAAC LEE KELLEY |
| **27-CR-21-13795** | State of Minnesota vs JACOB MAMAR JOHNSON |
| **27-CR-21-14861** | State of Minnesota vs KESSIE KAFELE WILSON |
| **27-CR-21-6904** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8067** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8227** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8228** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8229** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8230** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-8511** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-21-1230** | State of Minnesota vs MAKIS DEVELL LANE |
| **27-CR-21-13752** | State of Minnesota vs MAKIS DEVELL LANE |

Add. 448

27-CR-23-1886

Filed in District Court
State of Minnesota
5/3/2024 2:56 PM

| | |
|---|---|
| **27-CR-21-6229** | State of Minnesota vs MARVAL BARNES |
| **27-CR-21-17008** | State of Minnesota vs NICOLLE LYNN FAWCETT |
| **27-CR-21-928** | State of Minnesota vs PRIEST JESUS DORSEY |
| **27-CR-21-6382** | State of Minnesota vs PRIEST JESUS DORSEY |
| **27-CR-21-23131** | State of Minnesota vs Rex Allen Basswood  Jr. |
| **27-CR-21-8412** | State of Minnesota vs Stephone Ahmad Gammage |
| **27-CR-21-6710** | State of Minnesota vs TEMEKA MICHELLE NICHOLS |
| **27-CR-21-19552** | State of Minnesota vs TERRELL JOHNSON |
| **27-CR-21-23233** | State of Minnesota vs TERRELL JOHNSON |

## Shared Criminal Cases originating in 2022 -

| | |
|---|---|
| **27-CR-22-21925** | State of Minnesota vs Abdinour Mohamed Alasow |
| **27-CR-22-23317** | State of Minnesota vs Abdinour Mohamed Alasow |
| **27-CR-22-18859** | State of Minnesota vs ABDIQANI AHMED HASSAN |
| **27-CR-22-22985** | State of Minnesota vs ABDIQANI AHMED HASSAN |
| **27-CR-22-18776** | State of Minnesota vs AMY LOUISE LILLEVOLD |
| **27-CR-22-20033** | State of Minnesota vs ANGELIC DENISE NUNN |
| **27-CR-22-15550** | State of Minnesota vs BRITTANY LATESHA CRUTCHFIELD |
| **27-CR-22-7797** | State of Minnesota vs Carmen Bendu Greaves |
| **27-CR-22-25134** | State of Minnesota vs Carmen Bendu Greaves |
| **27-CR-22-15430** | State of Minnesota vs CHARLESETTA STARLET BROWN |
| **27-CR-22-3377** | State of Minnesota vs CHASE RADLEY GREEN |
| **27-CR-22-22687** | State of Minnesota vs CHASE RADLEY GREEN |
| **27-CR-22-19036** | State of Minnesota vs Crystal Latasha Mcbounds |
| **27-CR-22-3570** | State of Minnesota vs Dennis Joseph Barry |
| **27-CR-22-22521** | State of Minnesota vs Dennis Joseph Barry |
| **27-CR-22-24357** | State of Minnesota vs DENNIS MICHAEL THILL |
| **27-CR-22-9720** | State of Minnesota vs EMANUEL OMAR BLACK |
| **27-CR-22-12076** | State of Minnesota vs Emanuel Omar Black |
| **27-CR-22-4087** | State of Minnesota vs GORDON EUGENE SHARP Jr. |
| **27-CR-22-22963** | State of Minnesota vs GORDON EUGENE SHARP Jr. |
| **27-CR-22-5532** | State of Minnesota vs Isaac Lee Kelley |
| **27-CR-22-7953** | State of Minnesota vs ISAAC LEE KELLEY |
| **27-CR-22-20527** | State of Minnesota vs JARELLE THOMAS VAUGHN |
| **27-CR-22-18209** | State of Minnesota vs JULIET KAY HIGGINS |
| **27-CR-22-10646** | State of Minnesota vs LAMAR GLASS |
| **27-CR-22-17300** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-22-21679** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-22-24045** | State of Minnesota vs Lucas Patrick Kraskey |
| **27-CR-22-10055** | State of Minnesota vs MAKIS DUVELL LANE |
| **27-CR-22-4879** | State of Minnesota vs MANYARA NICOLE WATKINS |
| **27-CR-22-13185** | State of Minnesota vs MARK ANTHONY REINHART |
| **27-CR-22-18789** | State of Minnesota vs MOLLY ANNE PRICE |
| **27-CR-22-25151** | State of Minnesota vs NICOLE LORETTA KELM |
| **27-CR-22-18938** | State of Minnesota vs NURADIN MOHAMUD |
| **27-CR-22-4239** | State of Minnesota vs PRIEST JESUS DORSEY |
| **27-CR-22-24627** | State of Minnesota vs Rex Allen Basswood Jr. |
| **27-CR-22-14541** | State of Minnesota vs RODRICK JEROME CARPENTER II |
| **27-CR-22-15358** | State of Minnesota vs RODRICK JEROME CARPENTER II |

Add. 449

| 27-CR-22-1165 | State of Minnesota vs TERRELL JOHNSON |
| 27-CR-22-4898 | State of Minnesota vs TERRELL JOHNSON |
| 27-CR-22-13941 | State of Minnesota vs TIA TIAUNNA PAYNE |
| 27-CR-22-14493 | State of Minnesota vs TIMOTHY TERRELL STUCKEY |
| 27-CR-22-3553 | State of Minnesota vs WILLIAM LEE NABORS |
| 27-CR-22-22850 | State of Minnesota vs YASMIN AHMED ALI |

## Shared Criminal Cases originating in 2023 -

| 27-CR-23-3198 | State of Minnesota vs AARON DASHAUN CHERRY |
| 27-CR-23-512 | State of Minnesota vs Abdinour Mohamed Alasow |
| 27-CR-23-883 | State of Minnesota vs Abdinour Mohamed Alasow |
| 27-CR-23-3496 | State of Minnesota vs ABDULKADIR ELMI EGAL |
| 27-CR-23-12360 | State of Minnesota vs ALEXANDER ORVAL THOMLEY |
| 27-CR-23-24219 | State of Minnesota vs ALEXI BRE WASHINGTON |
| 27-CR-23-8721 | State of Minnesota vs Daniel Lamar Ford |
| 27-CR-23-4547 | State of Minnesota vs Delayna Adrianne Lussier |
| 27-CR-23-10954 | State of Minnesota vs Delayna Adrianne Lussier |
| 27-CR-23-17576 | State of Minnesota vs EMANUEL OMAR BLACK |
| 27-CR-23-16281 | State of Minnesota vs FUE VANG |
| 27-CR-23-16927 | State of Minnesota vs GORDON EUGENE SHARP Jr. |
| 27-CR-23-2152 | State of Minnesota vs GRAHM MARK FLETCHER |
| 27-CR-23-8560 | State of Minnesota vs INGRAM METEBO OYUGI |
| 27-CR-23-12653 | State of Minnesota vs JACOB JOSEPH SCHECH |
| 27-CR-23-8406 | State of Minnesota vs JALEISHA LANAY TAYLOR |
| 27-CR-23-13960 | State of Minnesota vs JEREMIAH JAMES RIVERS |
| 27-CR-23-1600 | State of Minnesota vs JIMMY EDWARD SPEARS III |
| 27-CR-23-20715 | State of Minnesota vs KESSIE KAFELE WILSON |
| 27-CR-23-385 | State of Minnesota vs Lucas Patrick Kraskey |
| 27-CR-23-5751 | State of Minnesota vs Lucas Patrick Kraskey |
| 27-CR-23-5213 | State of Minnesota vs MARK ANTHONY REINHART |
| **27-CR-23-1886** | **State of Minnesota vs MATTHEW DAVID GUERTIN** |
| 27-CR-23-1101 | State of Minnesota vs MICHAEL CHANTEL WRIGHT |
| 27-CR-23-284 | State of Minnesota vs MOHAMED ABDI SHIDE |
| 27-CR-23-3423 | State of Minnesota vs MOHAMED ABDI SHIDE |
| 27-CR-23-3459 | State of Minnesota vs MUAD ABDULKADIR |
| 27-CR-23-3460 | State of Minnesota vs MUAD ABDULKADIR |
| 27-CR-23-21403 | State of Minnesota vs PETER JAHAN LEHMEYER |
| 27-CR-23-2073 | State of Minnesota vs PRIEST JESUS DORSEY |
| 27-CR-23-9135 | State of Minnesota vs Rashi Tamboura Williams |
| 27-CR-23-18846 | State of Minnesota vs RICKY NELSON SULLIVAN Jr. |
| 27-CR-23-18850 | State of Minnesota vs RICKY NELSON SULLIVAN Jr. |
| 27-CR-23-21653 | State of Minnesota vs ROBERT WILLIAM BALSIMO |
| 27-CR-23-2480 | State of Minnesota vs Sandra Vongsaphay |
| 27-CR-23-8649 | State of Minnesota vs TERRELL JOHNSON |
| 27-CR-23-9546 | State of Minnesota vs TIMOTHY TERRELL STUCKEY |
| 27-CR-23-18964 | State of Minnesota vs TROY CARL WARNKE Jr. |
| 27-CR-23-1658 | State of Minnesota vs YASMIN AHMED ALI |

Add. 450

# Shared Mental Health / Probate Cases of all three Judicial Officers:[1]

## Shared Mental Health / Probate Cases originating in 2022 -

**27-MH-PR-22-1394**
In the Matter of the Civil Commitment of Caspar Huy Vuong aka Casper Huy Vuong  Respondent

## Shared Mental Health / Probate Cases originating in 2023 -

**27-MH-PR-23-224**
In the Matter of the Civil Commitment of Andrea Ulrich  Respondent

**27-MH-PR-23-358**
In the Matter of the Civil Commitment of Bilal Compton  Respondent

**27-MH-PR-23-892**
In the Matter of the Civil Commitment of Michael Palmquist  Respondent

**27-MH-PR-23-1020**
In the Matter of the Civil Commitment of Karen Marie Croonquist  Respondent

**27-MH-PR-23-1021**
In the Matter of the Civil Commitment of Stacy Schmidt  Respondent

**27-MH-PR-23-1181**
In the Matter of the Civil Commitment of Faham Osman Ali  Respondent

**27-MH-PR-23-1241**
In the Matter of the Civil Commitment of TROY CARL WARNKE  Jr.  Respondent

**27-MH-PR-23-1461**
In the Matter of the Civil Commitment of JACOB JOSEPH SCHECH  Respondent

## Shared Mental Health / Probate Cases originating in 2024 -

**27-MH-PR-24-9**
In the Matter of the Civil Commitment of Kevin Christopherson Kuyoc aka Kevin Christopherson Kuyoc Tzuc aka Keving Christopherson Kuyoc  Respondent

---

[1]  It is highly releavnt to point out the fact that this analysis was conducted based solely on the 'hearing' dates. One of the Judicial Referees, George Borer, is also involved in the defendant's civil commitment case as well. For some reaosn the hearing that George Borer had scheduled on February 1, 2024 cannot be found in his 'official' civil court hearing dates when searching on the courts MCRO site. The defendant also experimeted with additional Python scripts to match the names of the party involved in both civil and criminal cases but did not pursue that path further. The defendant believes that all of these results he was able to put together is worthy of much more investigation and time, but the defendant had to 'draw the line' somewhere in regards to how much time he put into this research.

Add. 451

# MCRO Document and Judicial Order Analysis

| | |
|---|---|
| Unique Criminal Case Numbers | 163 |
| | |
| Defendant Names by Exact String Match | 79 |
| Defendant Names by Very Similar String Match | 73 |
| Defendant Names Only Appearing a Single Time | 45 |
| | |
| MCRO PDF Docs Downloaded for All Shared Cases | 3556 |
| | |
| E-filed Comp Order for Detention | 79 |
| Law Enforcement Notice of Release and Appearance | 48 |
| Order for Conditional Release | 222 |
| Notice of Case Reassignment | 136 |
| Notice of Appearance | 28 |
| Demand or Request for Discovery | 99 |
| Pandemic Cancelled or Rescheduled Hearing | 17 |
| Petition to Proceed as ProSe Counsel | 4 |
| Notice of Hearing | 434 |
| Notice of Remote Hearing with Instructions | 644 |
| Returned Mail | 238 |
| Witness List | 28 |
| Rule 20.01 Evaluation for Competency to Proceed | 488 |
| Finding of Incompetency and Order | 130 |
| | |
| Incompetency Orders by Julia Dayton Klein | 19 |
| Incompetency Orders by Danielle Mercurio | 38 |
| Incompetency Orders by George Borer | 37 |
| Incompetency Orders total of All Three | 94 |
| Rule 20 and Incompetency Order by Same Person | 6 |

## Ctrl+F Search Results of All 644
## 'Notice of Remote Hearing with Instructions' MCRO PDF's

| | |
|---|---|
| "Meeting ID: 160 223 0876" | 358 |
| "Meeting ID: 160 815 2947" | 84 |
| "Meeting ID: 161 686 0727" | 10 |
| "Meeting ID: 160 596 3061" | 12 |
| "Meeting ID: 160 897 9580" | 6 |
| "Meeting ID: 161 201 2699" | 4 |
| "Meeting ID: 160 921 4567" | 6 |
| "Meeting ID: 161 094 4574" | 35 |

Add. 452

| "Meeting ID: 160 368 8210" | 14 |
| "Meeting ID: 161 3603 4346" | 1 |
| "Passcode: 1234" | 520 |
| "Meeting ID:" | 812 |
| "Passcode:" | 811 |
| "MNCIS-PAN" | 810 |
| "Pandemic" | 676 |
| "HENN-CR Pandemic Notice of Remote Hearing" | 198 |

## 2017 (27-CR-17-XXXX) Case Statistics

| Unique Criminal Case Numbers | 3 |
| Defendant Names by Exact String Match | 1 |
| Defendant Names by Very Similar String Match | 1 |
| Defendant Names Only Appearing a Single Time | 0 |
| | |
| MCRO PDF Documents Downloaded | 73 |
| E-filed Comp Order for Detention | 1 |
| Law Enforcement Notice of Release and Appearance | 0 |
| Order for Conditional Release | 0 |
| Notice of Case Reassignment | 0 |
| Notice of Hearing | 0 |
| Notice of Remote Hearing with Instructions | 8 |
| Returned Mail | 3 |
| Witness List | 0 |
| Rule 20.01 Evaluation for Competency to Proceed | 4 |
| Finding of Incompetency and Order | 0 |

## 2018 (27-CR-18-XXXX) Case Statistics

| Unique Criminal Case Numbers | 4 |
| Defendant Names by Exact String Match | 4 |
| Defendant Names by Very Similar String Match | 4 |
| Defendant Names Only Appearing a Single Time | 4 |
| | |
| MCRO PDF Documents Downloaded | 184 |
| E-filed Comp Order for Detention | 1 |
| Law Enforcement Notice of Release and Appearance | 4 |
| Order for Conditional Release | 3 |
| Notice of Case Reassignment | 1 |
| Notice of Hearing | 28 |
| Notice of Remote Hearing with Instructions | 22 |
| Returned Mail | 11 |
| Witness List | 3 |
| Rule 20.01 Evaluation for Competency to Proceed | 23 |
| Finding of Incompetency and Order | 3 |

Add. 453

## 2019 (27-CR-19-XXXX) Case Statistics

| | |
|---|---|
| Unique Criminal Case Numbers | 12 |
| Defendant Names by Exact String Match | 8 |
| Defendant Names by Very Similar String Match | 8 |
| Defendant Names Only Appearing a Single Time | 5 |
| MCRO PDF Documents Downloaded | 459 |
| | |
| E-filed Comp Order for Detention | 5 |
| Law Enforcement Notice of Release and Appearance | 4 |
| Order for Conditional Release | 22 |
| Notice of Case Reassignment | 23 |
| Notice of Hearing | 87 |
| Notice of Remote Hearing with Instructions | 67 |
| Returned Mail | 31 |
| Witness List | 4 |
| Rule 20.01 Evaluation for Competency to Proceed | 49 |
| Finding of Incompetency and Order | 10 |

## 2020 (27-CR-20-XXXX) Case Statistics

| | |
|---|---|
| Unique Criminal Case Numbers | 20 |
| Defendant Names by Exact String Match | 19 |
| Defendant Names by Very Similar String Match | 18 |
| Defendant Names Only Appearing a Single Time | 18 |
| MCRO PDF Documents Downloaded | 606 |
| | |
| E-filed Comp Order for Detention | 8 |
| Law Enforcement Notice of Release and Appearance | 11 |
| Order for Conditional Release | 28 |
| Notice of Case Reassignment | 26 |
| Notice of Hearing | 78 |
| Notice of Remote Hearing with Instructions | 125 |
| Returned Mail | 47 |
| Witness List | 7 |
| Rule 20.01 Evaluation for Competency to Proceed | 72 |
| Finding of Incompetency and Order | 12 |

Add. 454

## 2021 (27-CR-21-XXXX) Case Statistics

| | |
|---|---|
| Unique Criminal Case Numbers | 41 |
| Defendant Names by Exact String Match | 25 |
| Defendant Names Only Appearing a Single Time | 16 |
| Defendant Names by Very Similar String Match | 24 |
| | |
| MCRO PDF Documents Downloaded | 1122 |
| E-filed Comp Order for Detention | 19 |
| Law Enforcement Notice of Release and Appearance | 20 |
| Order for Conditional Release | 101 |
| Notice of Case Reassignment | 55 |
| Notice of Hearing | 90 |
| Notice of Remote Hearing with Instructions | 230 |
| Returned Mail | 78 |
| Witness List | 11 |
| Rule 20.01 Evaluation for Competency to Proceed | 169 |
| Finding of Incompetency and Order | 37 |

## 2022 (27-CR-22-XXXX) Case Statistics

| | |
|---|---|
| Unique Criminal Case Numbers | 44 |
| Defendant Names by Exact String Match | 32 |
| Defendant Names Only Appearing a Single Time | 21 |
| Defendant Names by Very Similar String Match | 32 |
| | |
| MCRO PDF Documents Downloaded | 772 |
| E-filed Comp Order for Detention | 18 |
| Law Enforcement Notice of Release and Appearance | 5 |
| Order for Conditional Release | 46 |
| Notice of Case Reassignment | 25 |
| Notice of Hearing | 105 |
| Notice of Remote Hearing with Instructions | 118 |
| Returned Mail | 49 |
| Witness List | 3 |
| Rule 20.01 Evaluation for Competency to Proceed | 110 |
| Finding of Incompetency and Order | 35 |

Add. 455

## 2023 (27-CR-23-XXXX) Case Statistics

| | |
|---|---|
| Unique Criminal Case Numbers | 39 |
| Defendant Names by Exact String Match | 33 |
| Defendant Names Only Appearing a Single Time | 27 |
| Defendant Names by Very Similar String Match | 33 |
| MCRO PDF Documents Downloaded | 413 |
| | |
| E-filed Comp Order for Detention | 27 |
| Law Enforcement Notice of Release and Appearance | 4 |
| Order for Conditional Release | 22 |
| Notice of Case Reassignment | 6 |
| Notice of Hearing | 46 |
| Notice of Remote Hearing with Instructions | 74 |
| Returned Mail | 19 |
| Witness List | 0 |
| Rule 20.01 Evaluation for Competency to Proceed | 61 |
| Finding of Incompetency and Order | 33 |

## Web Browser Automation Script Used to Download All 'Shared Case' MCRO PDF Documents

```python
from selenium import webdriver
from selenium.webdriver.common.by import By
from selenium.webdriver.chrome.options import Options
from selenium.webdriver.chrome.service import Service
from selenium.webdriver.support.ui import WebDriverWait
from selenium.webdriver.support import expected_conditions as EC
import time
import os


def setup_driver(initial_url):
    """ Set up Selenium WebDriver with visible browser window and navigate to the initial URL. """
    chrome_options = Options()
    # Specify download path
    current_dir = os.getcwd()
    prefs = {
            "download.default_directory": current_dir,
            "download.prompt_for_download": False,
            "download.directory_upgrade": True,
            "plugins.always_open_pdf_externally": True  # It will not show PDF directly in chrome
    }
    chrome_options.add_experimental_option("prefs", prefs)
```

Add. 456

```python
    driver = webdriver.Chrome(options=chrome_options)
    driver.get(initial_url)
    return driver

def download_documents(driver):
    """ Download documents with delays to manage system load. """
    wait = WebDriverWait(driver, 20)
    input("Navigate to the desired page and press Enter to start downloading documents...")
    try:
        buttons = wait.until(EC.presence_of_all_elements_located((By.CSS_SELECTOR, "button.btn-mpa-download-document")))
        for index, button in enumerate(buttons, start=1):
            driver.execute_script("arguments[0].scrollIntoView();", button)
            button.click()
            print(f"Document {index} download initiated.")
            time.sleep(1)  # Delay between downloads to avoid overwhelming the browser
        print("All available documents have been initiated for download.")
    except Exception as e:
        print(f"An error occurred: {str(e)}")

def main():
    initial_url = "https://publicaccess.courts.state.mn.us/"
    driver = setup_driver(initial_url)
    try:
        while True:
            download_documents(driver)
            if input("Press Enter to download again or type 'exit' to quit: ").lower() == 'exit':
                break
    finally:
        driver.quit()

if __name__ == "__main__":
    main()
```

Add. 457

**A24-_____**
**STATE OF MINNESOTA**
**IN COURT OF APPEALS**

Matthew David Guertin,                    District Court Case: 27-CR-23-1886

        **Petitioner,**                   Court Order Date: April 12, 2024

vs.

                                              **PETITION FOR**
**State of Minnesota,**                   **DISCRETIONARY REVIEW**

        **Respondent.**

---

TO: THE COURT OF APPEALS OF THE STATE OF MINNESOTA

    Petitioner, Matthew David Guertin, comes forth pro se to respectfully request a discretionary review of the April 12, 2024 Order issued by the Honorable Julie Dayton Klein of the 4th Judicial District Court, denying Petioners Petition to Proceed as ProSe Counsel in his criminal court proceedings. This petition is based upon Minn. R. Crim. P. Rule 28.02, subd. 3, R. Civ. App. P. Rule 103.01, subd. 3(c), and R. Civ. App. P. Rule 105.

    Included as a necessary element of the extraordinary, and unprecedented nature of what comes before you is 10, separate Addendums as part of this petition, wherein (Add1.23) is (Addendum 1, p. 23), and (Add4.34-39) is (Addendum 4, pp. 34-39).

## **STATEMENT OF FACTS**

    On January 24, 2023, Mr. Guertin faced charges of one count of 'Reckless Discharge of a Firearm Within a Municipality' under 609.66.1a(a)(3), and three counts of

Add. 458

27-CR-23-1886

Filed in District Court
State of Minnesota
5/15/2024 11:46 AM

'Firearm-Receive/Possess With No Serial Number' under 609.667(3). These charges stem from an incident on January 21, 2023, where Mr. Guertin discharged a firearm into the air from a bedroom window to attract police attention, believing his life was at risk. He perceived that his communication devices were compromised, preventing a direct call to law enforcement. During the police response, Mr. Guertin ceased firing and voluntarily offered to surrender his firearms, indicating compliance and no intent to harm himself or others.

The allegations of a standoff are inaccurate; the interaction involved Mr. Guertin requesting to eat before exiting the premises, without any negotiation or confrontation. This unusual method of contacting police, while not advisable, stemmed from a series of escalating events. Mr. Guertin was engrossed in his entrepreneurial activities, notably with his company, InfiniSet, Inc., which had recently secured a patent allowance for the Petitioner's innovative VR treadmill technology as described in US 11,577,177.

The situation escalated when Mr. Guertin discovered what he believed to be a complex scheme to usurp his intellectual property. This included encountering advanced ai technology being utilized and substantial corporate interest in technologies mirroring his inventions. His attempts to seek help were extensive, involving multiple communications with law enforcement and federal agencies, reflecting his growing distress and urgency.

These extraordinary circumstances culminated when Mr. Guertin discovered unauthorized external communications from his computer, despite disabling all known

2

Add. 459

Filed in District Court
State of Minnesota
5/15/2024 11:46 AM

connectivity. This discovery heightened his fear and confusion, significantly impacting his perception and reactions.

This petition urgently demands a discretionary review of the April 12, 2024 court order along with all associated proceedings of Mr. Guertin, as it has now been unequivocally established that the same external forces previously influencing Mr. Guertin's actions are now actively manipulating the judicial process itself. What is currently taking place is a very clear, and direct interference in Mr. Guertin's legal affairs. The Petitioner asserts that the Hennepin County 4th Judicial District Court is complicit in a criminal conspiracy, directly affecting the integrity of Mr. Guertin's ongoing court case. This unprecedented situation necessitates an immediate and thorough review to rectify the compromised judicial proceedings and uphold justice.

## STATEMENT OF ISSUES

**FRAUD ON THE COURT BY THE COURT ITSELF:**

This petition alleges grave concerns regarding the involvement of the court itself in fraudulent activities directly affecting the integrity of judicial proceedings. The discovery materials presented as evidence have been manipulated to misrepresent the petitioner's activities and living conditions, influencing the outcomes of critical judicial decisions including civil commitment hearings and subsequent legal processes.

Add. 460

Filed in District Court
State of Minnesota
5/15/2024 11:46 AM

my defense. This situation is particularly alarming given the potential exculpatory or mitigating evidence contained within these withheld materials.

**3. Legal Precedents and Judicial Obligations:** The court's actions contravene established legal standards as illustrated in cases like *Bagent v. Blessing Care Corp., 862 NE 2d 985 - Ill: Supreme Court 2007,* which emphasizes the critical nature of discovery access in ensuring a fair trial. Additionally, *Maldonado v. Superior Court of San Mateo County, 274 P. 3d 1110 - Cal: Supreme Court 2012,* reinforces the obligation of courts to ensure that defendants have adequate access to necessary records to prepare their defense.

**Conclusion**

Given the documented refusals and the significant implications of these denials, this petition requests immediate judicial intervention to compel the provision of the withheld discovery and medical records. Such actions are essential to uphold the fairness of the proceedings and to prevent further prejudice against my rights to an effective defense.

**IMPARTIALITY CONCERNS AND CIRCULAR HANDLING BY A SMALL TEAM OF JUDICIAL OFFICERS:**

This petition addresses significant issues regarding the impartiality of judicial proceedings, which stem from the circular handling of my case by a small team of three judicial officers. This has raised substantial questions about the fairness and independence required in the administration of justice.

Add. 461

27-CR-23-1886

Filed in District Court
State of Minnesota
5/15/2024 11:46 AM

**1. Circular Handling and Concentration of Power:**  The continuous handling of my case by the same set of three judicial officers blurs the boundaries required for impartiality and fairness. This concentrated control inherently increases the risk of bias and undermines the impartiality required in judicial proceedings.

**2. Systemic Protocols vs. Unethical Arrangements:**  While this pattern of handling might be seen as a procedural norm within the judicial system, it raises significant legal and ethical concerns about the potential for undue influence and prejudicial treatment, especially when such evaluations facilitate a rapid channeling of cases to this select group.

**3. Legal Precedents and Judicial Integrity:** Cases like *SooHoo v. Johnson*, *731 NW 2d 815  (Minn: Supreme Court 2007)*   emphasize the necessity of maintaining judicial impartiality to ensure fairness in proceedings. Moreover, *State v. Barnes, 713 NW 2d 325 (Minn: Supreme Court 2006),* acknowledges the need for clear procedural separations to uphold justice.

**Conclusion**

Given the observed patterns and the significant issues raised, this petition requests a thorough review of the procedural practices involving the small group of judicial officers. Ensuring judicial impartiality is crucial to maintain public trust and the integrity of the judicial system.

Add. 462

A24-0780
**STATE OF MINNESOTA**
**IN COURT OF APPEALS**

State of Minnesota,

                Respondent,

vs.

Matthew David Guertin,

                Petitioner.

District Court Case: 27-CR-23-1886

Court Order Date: April 12, 2024

**PETITIONER'S
CORRESPONDENCE OF
SUPPLEMENTARY ADDENDUM
INFORMATION**

---

## SUPPLEMENTARY ADDENDUM INFORMATION

---

### ADDENDUM-01: Key Motions and Orders Submitted into Petitioner's Case

April 12, 2024, **Order Denying Petition to Proceed ProSe**, Index 33……………....…… 1

January 24, 2023, **Order of Detention**, Index 1…………….………………….……….. 3

June 14, 2023, **Order for Continuance**, Index 16…………………………..….….……. 10

April 3, 2024, Pro Se Motion for Judicial Notice, Exhibit Bb
**July 13, 2023 Court Order metadata**, pp. 173-174, Index 28………………..….….… 11

April 3, 2024, Pro Se Motion for Judicial Notice, Exhibit Bb
**July 13, 2023 Court Order body**, pp. 175-181, Index 28………………..…………. 13

November 15, 2023, **Order Evaluation for Competency to Proceed**, Index 21…....… 20

January 5, 2024, **Pro Se Demand for Discovery**, Index 22………………..…..…… 22

January 17, 2024, **Finding of Incompetency and Order**, Index 25…………..…..... 23

April 3, 2024, Pro Se Motion for Judicial Notice, Exhibit Qb -
**Jan 30, 2024 Pro Se Motion for Continuance in case
27-MH-PR-23-815**, pp. 241-250, Index 28……………………………………….....… 27

Add. 463

April 3, 2024, Pro Se Motion for Judicial Notice, Exhibit Rb -
**Jan 30, 2024 Pro Se Motion for Medical Records in case**
**27-MH-PR-23-815**, pp. 251-252, Index 28…………………………….….…..…….…...... 37

April 3, 2024, Pro Se Motion for Judicial Notice, Exhibit Sb -
**Jan 31, 2024, Waiver signed to avoid in person appearance in case**
**27-MH-PR-23-815**, p. 253, Index 28……………………………………………..….… 39

April 3, 2024, **Petition to Proceed as ProSe Counsel**, Index 27………...……...….…… 40

### ADDENDUM-02: FRAUD ON THE COURT, BY THE COURT ITSELF

**Petitioners 40 page 'Motion to Compel Discovery and Affidavit of Fact' which serves to prove the manipulation and editing of crucial discovery photographs's pertinent to his case, carried out to misrepresent Petitioner's activities and living conditions. Fraudulent discovery was provided to the psychological examiner who conducted Petitioner's resulting exam following the 'Petition for Civil Commitment' filed against Petitioner on July 20, 2023.**

**April 4, 2024, Pro Se Motion to Compel Discovery,**
**Body of the Motion**, pp. 1-7, Index 29.….………..…………………..…………....… 1

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit Af -
**Affidavit of Fact**, pp. 8-9, Index 29…..…….….………..……………….…..…………….. 8

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit A -
**Aug 3, 2023 Michael Biglow Email**, p. 10, Index 29…………………………..…….. 10

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit B -
**Michael Biglow PGP Email Header**, pp. 11-12, Index 29……………………….... 11

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit C -
**Cover Page of fraudulent discovery PDF**, p. 13, Index 29……………………..…..... 13

Add. 464

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit D -
**Metadata / Doc Properties of PDF document**, p. 14, Index 29…………………...…… 14

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit E -
**Missing 24 photos and create one day earlier**, pp. 15-16, Index 29………………….... 15

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit F -
**Brief overview of photography and aspect ratios**, p. 17, Index 29..………………….… 17

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit G -
**Detailed spreadsheet presentation of the fraud**, pp. 18-23, Index 29....………..…...…… 18

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit H -
**Images/Photographs from the PDF are shared as is**, pp. 24-26, Index 29……………... 24

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit I -
**Artifact Compare at 500% Scaled**, p. 27, Index 29……………………………...…..... 27

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit J -
**A duplicate of the same image is passed off as unique**, p. 28, Index 29…………..…..… 28

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit K -
**Brief overview of wide anlge lens 'barrel distortion'**, p. 29, Index 29……...………… 29

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit L -
**Using lens distortion to find the true image center**, pp. 30-35, Index 29………..…..... 30

April 4, 2024, Pro Se Motion to Compel Discovery, Exhibit M -
**Dr. Milz told about fraud before Rule 20 exam began**, pp. 36-40, Index 29………..…… 36

**May 3, 2024, Pro Se Correspondence, Discovery follow-up**, Index 36…………...…… 41

Add. 465

## ADDENDUM-03: Petitioner's Data Analysis Of MCRO Court Records

**Based upon Petitioner's concern regarding what he views as his case being 'contained' and seemingly handled in a 'circular' pattern, wherein all of the key decisions made in his criminal proceedings are 'bounced' back and forth between the same three Judicial Officer's**

May 3, 2024, Pro Se Affidavit of Fact,  **Data Analysis, Motion Body**, pp. 1-5, Index 37...…………………….…………………….…..... 1

May 3, 2024, Pro Se Affidavit of Fact, Data Analysis, **Exhibit A - Shared Judicial Assignments to Cases**, pp. 6-20, Index 37……………………...….... 6

May 3, 2024, Pro Se Affidavit of Fact, Data Analysis, **Exhibit B - Circular Handling**, pp. 21-27, Index 37……………………………………..….…… 21

May 3, 2024, Pro Se Affidavit of Fact, Data Analysis, **Exhibit C - Incompetency Orders Analysis**, pp. 28-31, Index 37…………………………...…... 28

## ADDENDUM-04: Petitioners Historical Cell Phone Image Timeline

**Petitioner's timeline of both personal and business related activites prior to his criminal charges originating on January 21, 2023 and after his posting bail, and subsequent release**

May 6, 2024, Pro Se Affidavit of Fact,  **Picture Timeline, Motion Body**, pp. 1-2, Index 39...…………………………….…………….…..... 1

May 6, 2024, Pro Se Affidavit of Fact, Picture Timeline, **Exhibit A - Cell Phone Image Timeline**, pp. 3-43, Index 39.………………………………...…….... 3

Add. 466